In re PRECISION MASTERS, INC., Debtor.

PRECISION MASTERS, INC., Plaintiff,

v.

WILSON-GARNER COMPANY, Defendant.

Bankruptcy No. IP82–5143RA.
Adv. No. 83–1003.

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

April 19, 1984.

James S. Kowalik, Hopper & Opperman, Indianapolis, Ind., for plaintiff.

Tony H. Abbott, Foley, Cutter & Abbott, Indianapolis, Ind., for defendant.

## ENTRY

ROBERT L. BAYT, Bankruptcy Judge.

This matter came before the Court on the plaintiff's Complaint to Recover Preferential Payment filed August 24, 1983. The defendant's Answer was filed on December 19, 1983. On February 3 of this year, the defendant filed a pretrial memorandum. On February 7, 1984, a trial was held at which James S. Kowalik appeared as counsel for the plaintiff and Tony H. Abbott appeared for the defendant. The defendant's Post Trial Memorandum was filed February 9, 1984. The Court has duly considered the evidence introduced and the arguments advanced by the parties, and now finds for the plaintiff.

### Findings of Fact

1. This court has jurisdiction over the parties and the subject matter under 28 U.S.C. § 1471(a) and (b) and the Emergency Resolution of the District Court.

2. The plaintiff is a debtor-in-possession, having filed its Voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code on December 29, 1982.

3. The plaintiff, during the 90-day period immediately preceding the filing of its voluntary petition herein, transferred to the defendant the sum of $7,116.67, which transfer was for the benefit of the defendant, for or on account of an antecedent debt owed by the plaintiff before said transfer was made, while the plaintiff was insolvent, that enabled the defendant to receive a greater percentage of its claim than it would have received under the distributive provisions of Chapter 7 of the Bankruptcy Code had the transfer not been made and the defendant received payment of the debt to the extent provided under the Code.

4. The transfers in question were as follows:

(a) Check No. 082, dated October 29, 1982, in the amount of $5,226.29, marked paid by the bank on November 3, 1982, for the following invoices:

| Invoice Number | Date | Amount |
|---|---|---|
| 59019 | 7/30/82 | $1,236.11 |
| 59470 | 8/10/82 | 513.00 |
| 57207 | 6/30/82 | 875.12 |
| 57210 | 6/30/82 | 510.64 |
| 57213 | 6/30/82 | 1,486.64 |
| 57691 | 7/6/82 | 608.82 |
| 59992 | Credit Memo of 8/24/82 | [4.04] |

(b) Check No. 1065, dated November 10, 1982, in the amount of $845.43 and marked paid by the bank on November 16, 1982, for the following invoice:

| Invoice Number | Date | Amount |
|---|---|---|
| 60195 | 8/30/82 | $ 673.73 |

(c) Check No. 2371, dated October 12, 1982, in the amount of $1,217.65, marked paid by the bank on October 22, 1982, for the following invoices:

| Invoice Number | Date | Amount |
|---|---|---|
| 57875 | 7/9/82 | $ 600.85 |
| 59993 | 8/24/82 | [1.96] |
| 57212 | 6/30/82 | 618.76 |

5. The debtor was insolvent as defined in the Bankruptcy Code under 11 U.S.C. § 101(26), in which insolvent is defined as "a financial condition such as that the sum of the entity's debts is greater than all the entity's property, at fair valuation." Mr. Rolf Klebe, controller of Precision Masters, testified that during the period of the alleged preferential transfers, Precision Masters had no net equity, that the corporation had never made a profit and that the corporation was in dire need of additional financing in order to survive. Further, the Court takes judicial notice of the bankruptcy petition, which shows on date of filing the assets to be $2,437,600.00, and debts in the amount of $3,867,035.17. Mr. Klebe did testify that in May and June of 1982 when the orders were placed by the defendant, Precision Masters was paying its debts as they came due. However, such testimony is irrelevant as it does not describe the preferential period and is not the proper definition of involvency.

6. Under 11 U.S.C. § 547(f), the debtor is presumed to have been insolvent on or during the 90 days immediately preceding the date of filing of the petition and the defendant has not successfully rebutted such presumption.

7. The defendant presented testimony of alleged new value consisting of the following invoices, which were shipped but returned to the defendant:

| Debtor's Purchase Order Number | Defendant's Invoice Number | Date of Shipment | Amount of Invoice |
|---|---|---|---|
| P–1525 | 64985 | 12/14/82 | $ 535.50 |
| P–1527 | 65082 | 12/16/82 | 842.93 |
| P–1495 | 65083 | 12/16/82 | 383.37 |
| | | Total | $1,761.80 |

8. Additionally, the debtor's Purchase Order No. P–1523 is for a quantity of 6,050 place bolts at $.32 each, for a total cost of $1,936.00. The defendant's Invoice No. 64985 was a partial shipment of that order. The balance of that order was manufactured and prepared for shipment, but not shipped. The defendant further claims additional new value of UPS charges in the amount of $18.70, representing shipping costs, for a total alleged new value of $3,176.20.

9. In a letter by the president of Precision Masters dated December 23, 1982, to Wilson-Garner, it was requested that Precision Masters' Purchase Order Nos. P–1495, P–1525 and P–1527 be cancelled immediately, and that the defendant should contact FMC Corporation, for whom Precision Masters was subcontracting the job.

### Conclusions of Law

1. The checks paid to Wilson-Garner in the amount of $7,117.67 constitute a preferential treatment under 11 U.S.C. § 547.

2. 11 U.S.C. § 547(c)(4) states that the trustee may not avoid a transfer "to or for the benefit of a creditor—to the extent that after such transfer, such creditor gave new value to or for the benefit of the debtor, not secured by an otherwise unavoidable security interest; and on account of which new value of the debtor did not make an

otherwise unavoidable transfer to or for the benefit of such creditor."

■ 3. The policy behind the rule against preferential transfers is to prevent the depletion of the bankruptcy estate. Permitting debtors in anticipation of bankruptcy to satisfy obligations to preferred creditors would reduce the funds available to other unsecured creditors.

■ 4. The policy against preferential transfers is not undermined when the estate receives "new value" from a creditor in an amount equal to that paid out as a preferential transfer. In such a case the estate is not reduced, nor is it added to. Consequently, the rights of unsecured creditors are not prejudiced since their pro rata shares of the estate remain the same. Collier on *Bankruptcy*, ¶ 547–40 (15th Ed., Vol. IV).

■ 5. In this case, the debtor did not receive new value to enrich the estate—the goods were returned to the defendant, and thus the estate derived no benefit from those goods. The defendant may have an unsecured claim for improper rejection of goods or breach of contract, but such does not create new value as to benefit the estate. Additional value must be received to augment the estate in order to offset the preferential payment. *In re Rustia*, 20 B.R. 131, 6 C.B.C.2d 917, 920 (S.D.N.Y. 1982); *In re Duffy*, 3 B.R. 263, 1 C.B.C.2d 641 (Bkrptcy.S.D.N.Y.1980).

For the above-stated reasons, the plaintiff's Complaint to Recover Preferential Payment is GRANTED. The defendant shall transfer to the plaintiff the sum of $7,117.67 forthwith.