## In re FURR'S SUPERMARKETS, INC., A Delaware Corporation, Debtor.

### Yvette J. Gonzales, Trustee, Plaintiff—Appellant,

v.

### Nabisco Division of Kraft Foods, Inc., Defendant—Appellee.

BAP No. NM–04–035.
Bankruptcy No. 7–01–10779–SA.
Adversary No. 02–1091–S.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Nov. 24, 2004.

David T. Thuma (Stephanie L. Schaeffer with him on the briefs) of Jacobvitz, Thu-

ma & Walker, P.C., Albuquerque, New Mexico, for the Plaintiff—Appellant.

Valerie L. Bailey–Rihn of Quarles & Brady, LLP, Madison, Wisconsin, for the Defendant—Appellee.

Before BOHANON, CORNISH, and MICHAEL, Bankruptcy Judges.

### OPINION

MICHAEL, Bankruptcy Judge.

In every bankruptcy dispute, there are winners and losers. We are all familiar with the expression that, when someone complains about a result, it is called a case of "sour grapes." Today's dispute does not involve sour grapes, but rather, stale cookies. The issue is whether the invoice price of cookies, crackers, and other food products, delivered to the debtor but later returned to the creditor, should be considered part of the new value given by the creditor to the debtor. The products had significant value when delivered, but no value at the time of their return. The bankruptcy court ruled for the creditor, and reduced its preference liability by some $90,000.00. The trustee for the bankruptcy estate appeals. Finding no error, we affirm.

### I. *Background*

Furr's Supermarkets, Inc. ("Furr's") filed a petition for relief under Chapter 11 of the Bankruptcy Code on February 8, 2001. On December 19, 2001, the case was converted to Chapter 7, and Yvette J. Gonzales ("Gonzales" or "Trustee") was appointed to serve as trustee. In the course of performance of her duties, Gonzales investigated the transfers made by Furr's in the ninety days prior to the filing of its bankruptcy case (the "Preference Period"). Included in this investigation were transfers between Furr's and Nabisco, a Division of Kraft Foods, Inc. ("Nabisco").

At the time the bankruptcy case was filed, Furr's owned and operated 71 supermarkets in New Mexico and Texas. Nabisco was one of its suppliers. Rather than deliver to a central warehouse, salesmen for Nabisco delivered product to each of the stores. When product was delivered, Nabisco would issue an invoice to that store at the time of delivery. In the ordinary course of business between Nabisco and Furr's, Nabisco would also remove from the stores items it had previously delivered that were no longer saleable because they had become damaged, out of date, or were overstocked items.[1] When Nabisco collected such items, it issued a credit memo to the store in an amount equal to the original invoice price of the items. Under the terms of the contractual arrangement between Furr's and Nabisco, Furr's was entitled to a deduction of the face amount of the credit memo from the amounts that it owed Nabisco. In other words, Furr's was not required to pay for returned product.

During the Preference Period, Nabisco issued approximately 2,500 invoices and credit memos to Furr's. During that same time period, Nabisco delivered between $1.26 and $1.36 million in product to Furr's.[2] In addition, Nabisco accepted returns of product from Furr's. This product (the "Returned Product") was, at the time of its return, no longer saleable. It was damaged, out of date, or otherwise unsaleable by Furr's. Nabisco issued credit memos for the Returned Product

---

1. Apparently some or all of the product supplied by Nabisco were subject to a "freshness date"; items that were not sold by that date were considered unfit for sale.

2. During the course of litigation, Nabisco and the Trustee agreed that it would be impossible to determine the exact amount of delivered product.

(the "Credit Memos") in the amount of $90,180.74. Furr's was able to deduct the amount of the Credit Memos from the amounts it owed Nabisco. The quantity of Returned Product and the dollar amount of the Credit Memos was consistent with past amounts of purchases and returns between Furr's and Nabisco.

The factual findings outlined above were based upon stipulated facts. In addition, the bankruptcy court assumed that:

> 1) upon return, the products had no value, given that they were outdated, damaged in the store or were overstock;
> 2) the credit memos issued to Furr's were applied to subsequent invoices; and
> 3) the deliveries and returns were spread evenly over the preference period.[3]

The bankruptcy court also assumed "that, as part of the ordinary course of the grocery business, grocery products become damaged in stores or go out of date; these overhead type items are a cost of doing business."[4] The parties do not take issue with these assumptions. Moreover, at oral argument, counsel for the trustee admitted that the items returned by Furr's to Nabisco had no value to Nabisco at the time of their return.

The Trustee and Nabisco were unable to agree on the proper measure of "new value" given to Furr's by Nabisco. The Trustee argued that the dollar amount on the face of the Credit Memos ($90,180.74) should be deducted from the "new value." The Trustee took the position that because the Returned Product was ultimately of no value to Furr's (i.e., it was not sold in the course of Furr's business and generated no revenue), its value at the time of delivery (as reflected in the Credit Memos) should be deducted from the amount of new value provided by Nabisco. Nabisco disagreed, arguing that, because the Returned Product had value when delivered and no value upon its return, no deduction should be taken. The bankruptcy court found for Nabisco, noting that "the returned goods had no value at the time they were returned, did not deplete the Furr's estate, and did not preferentially benefit Nabisco."[5] This appeal followed.

## II. *Appellate Jurisdiction*

The order of the bankruptcy court was timely appealed.[6] The parties have not elected to have the appeal heard by the United States District Court for the District of New Mexico.[7] Accordingly, the Bankruptcy Appellate Panel has jurisdiction over this appeal.

A decision is considered final "if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[8] In this case, the order of the bankruptcy court determined the only outstanding issue in the litigation between the Trustee and Nabisco. Nothing remains for the trial court's consideration.

---

**3.** Memorandum Opinion at 3, *in* Appellant's App. at 445.

**4.** *Id.*

**5.** *Id.* at 5, *in* Appellant's App. at 447.

**6.** Fed. R. Bankr.P. 8002(a) (West 2004). Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C.A. § 101 *et. seq.* (West

2004). All other references to federal statutes and rules are also to West 2004 publications.

**7.** 28 U.S.C. § 158(c); Fed. R. Bankr.P. 8001(e).

**8.** *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)).

Thus, the decision of the bankruptcy court is final for purposes of review.

### III. *Standard of Review*

 Resolution of this appeal hinges upon the interpretation of § 547(c)(4) of the United States Bankruptcy Code. Statutory construction is a matter of law that we review *de novo*.[9] When reviewing questions of law *de novo*, the appellate court is not constrained by the trial court's conclusions, and may affirm the trial court on any legal ground supported by the record.[10]

### IV. *Issues on Appeal*

Gonzales has identified the following issues for consideration on appeal:

1. [Whether] [t]he Bankruptcy Court erred when it held that $90,180.74 of "credit memos" issued by Appellee to the debtor, and/or the returned products for which the credit memos were issued, should be disregarded and/or not taken into account when determining how much subsequent new value Appellee gave the debtor under 11 U.S.C. § 547(c)(4).

2. [Whether] [t]he Bankruptcy Court erred when it held that the amount of subsequent new value Appellee gave the debtor for product Appellee delivered to the debtor was determined by the invoice price of such product, without regard to the fact that historically the debtor returned a percentage of such product as being out of date, damaged, or otherwise unsaleable, and received a credit off the invoice price for such returned product.

3. [Whether] [t]he Bankruptcy Court erred when it held that the subsequent new value defense of 11 U.S.C. § 547(c)(4) does not require consideration or determination of the value of goods delivered to the debtor by the preference defendant beyond an inquiry into the invoice price of such product.[11]

We will limit our inquiry to the errors assigned by the Trustee.

### V. *Discussion*

 Section 547 of the Bankruptcy Code defines what constitutes a preference in bankruptcy cases.[12] It sets the parame-

---

**9.** *See In re Gledhill*, 164 F.3d 1338, 1340 (10th Cir.1999) ("The district court's interpretation of a statute is a question of law subject to de novo review by this court."); *see also Duncan v. Zubrod (In re Duncan)*, 294 B.R. 339, 342 (10th Cir. BAP 2003) (citing *Gledhill*).

**10.** *Wolfgang v. Mid–America Motorsports, Inc.*, 111 F.3d 1515, 1524 (10th Cir.1997).

**11.** Appellant's Brief at 1–2.

**12.** The elements of a preference action are spelled out in § 547(b):

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
 (1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition; or
(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

ters of recovery of such preferences by the debtor in possession or bankruptcy trustee. It also sets forth various defenses that may be made to a claim of preference. The issue in this appeal is the applicability of § 547(c)(4), which provides that

> (c) The trustee may not avoid under this section a transfer—
>> (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
>>> (A) not secured by an otherwise unavoidable security interest; and
>>> (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor[.] [13]

For purposes of this section, "new value" is defined as:

> money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation.[14]

The theory behind the "new value" exception has been ably explained by the United States Court of Appeals for the Eighth Circuit:

> The trustee is able to avoid preferences in bankruptcy for the sake of equality of distribution of assets among creditors. Therefore, a preference does not merely diminish the estate, it does so unfairly. A creditor who subsequently advances to the estate new value in an amount equal to the preference, however, "in effect returns the preference to the estate." The debtor who makes a preferential transfer to a creditor who subsequently advances new value, then, has not "depleted the bankruptcy estate to the disadvantage of other creditors." But when a debtor pays for new value or the creditor retains a security interest in the new value, "there is in effect no return of the preference." Thus, *the relevant inquiry under section 547(c)(4) is whether the new value replenishes the estate.* If the new value advanced has been paid for by the debtor, the estate is not replenished and the preference unfairly benefits a creditor.[15]

Other courts have noted that one purpose of the new value exception is to "encourage creditors to deal with troubled businesses." [16] This Court has held that new value is given at the time goods are shipped or delivered to a debtor.[17] This decision is in accordance with prior decisions of the United States Court of Appeals for the Tenth Circuit.[18]

The parties agree that Nabisco provided new value to Furr's through the delivery of product. The Trustee contends that the Returned Product cannot be considered to have "replenished the estate," and thus

§ 547(b). In order for a transfer to be deemed preferential, each of these elements must be present.

13. § 547(c)(4).

14. § 547(a)(2).

15. *In re Kroh Bros. Dev. Co.,* 930 F.2d 648, 652 (8th Cir.1991) (citations omitted) (emphasis added).

16. *Rushton v. E & S Int'l Enters., Inc. (In re Eleva, Inc.),* 235 B.R. 486, 489 (10th Cir. BAP 1999).

17. *Id.*

18. *Kenan v. Fort Worth Pipe Co. (In re George Rodman, Inc.),* 792 F.2d 125, 128 (10th Cir. 1986); *Spears v. Mich. Nat'l Bank (In re Allen),* 888 F.2d 1299, 1302 (10th Cir.1989).

cannot be included in the new value calculation. Nabisco contends that because the Returned Product had value when it was delivered to Furr's, and no value when Furr's returned it to Nabisco, the return did not deplete the estate, and the amount of the Credit Memos should not be deducted from the "new value" supplied by Nabisco.

This issue is resolved by looking at the language of § 547(c)(4)(B), which states that the new value defense is defeated, if, after receipt of the new value, the debtor made a transfer to the creditor that would be avoidable. The question is whether the return of goods by Furr's to Nabisco would be an avoidable transfer. That question must be answered in the negative for one simple reason: *at the time of their return to Nabisco, the goods had no value.* A transfer of valueless property is not an avoidable transfer. We see no difference for purposes of § 547(c)(4)(B) between the return of valueless property to the creditor and its destruction.[19] Since the return of goods by Furr's to Nabisco does not constitute an avoidable transfer, it does not dilute the new value provided by Nabisco. The decision of the bankruptcy court was correct, and should be affirmed.

In order to rule for the Trustee, we would have to conclude that (1) the Returned Product had no value at the time it was delivered to Furr's, and thus should not be considered part of the new value that Nabisco provided to Furr's; or (2) that the Returned Product retained its full invoice value at the time of the return, and thus constituted a preferential transfer by Furr's to Nabisco. The record supports neither of these conclusions. There is nothing to indicate that the Returned Product had any value other than its invoice value at the time of delivery to Furr's. Similarly, there is no basis for us to conclude that the Returned Product retained its value at the time of return. At that time, the Returned Product was damaged, out of date, or otherwise no longer saleable.

We have considered the cases cited by the Trustee in support of the argument that returned goods cannot be considered new value for purposes of § 547(c)(4). They are distinguishable from the case at bar. The court in *Moglia v. American Psychological Ass'n (In re Login Bros. Book Co.)*[20] did not reach the issue of value. In *Login Bros.*, the creditor had delivered books to the debtor on credit pre-petition, and obtained return of those books after the bankruptcy case was filed pursuant to court order. The debtor filed a preference action, and the creditor defended on the basis that, even though the books had been returned, the mere fact that they had been delivered supported the new value defense as a matter of law. Other than noting that the books had value, the issue of their value was never discussed. Instead, the bankruptcy court denied the creditor's motion for summary judgment, finding that a material issue of fact existed regarding the return of the books.[21] The issue of what happens when goods are returned that have no value at the time of their return was neither argued nor considered in *Login Bros.*

Similarly, in *Precision Masters, Inc. v. Wilson–Garner Co. (In re Precision Masters, Inc.)*,[22] another case relied upon by the Trustee, the issue of the return of valueless goods was not considered by the

---

**19.** The record is silent as to why Nabisco required the return of the valueless product.

**20.** 294 B.R. 297 (Bankr.N.D.Ill.2003).

**21.** *Id.* at 301.

**22.** 51 B.R. 258 (Bankr.S.D.Ind.1984).

court. Although the case involved the return of goods, there was no discussion of whether the goods diminished in value. Instead, the court held that "[a]dditional value must be received to augment the estate in order to offset the preferential payment,"[23] and that "the debtor did not receive new value to enrich the estate–the goods were returned to the defendant, and thus the estate derived no benefit from those goods."[24] Here, the bankruptcy court concluded that Furr's received additional value by the delivery of product by Nabisco. Thus, the decision in *Precision Masters* is not contrary to the ruling of the bankruptcy court.

Finally, in *Gander Mountain, Inc. v. Ventrice (In re Gander Mountain, Inc.),*[25] the debtor refused the goods at issue, and returned them immediately to the seller. In addition to the value of the refused items, the creditor argued that expenses it incurred as a result of the return of product constituted "new value" supplied by the creditor. In our case, not only did Furr's accept the Returned Product, Furr's retained it and attempted to sell it until the goods lost their value. Moreover, Nabisco is not asking the court to consider any of the expenses it may have incurred in the return of the Returned Product as new value. *Gander Mountain* is thus inapplicable to the case at bar.

Gonzales contends that, based upon the fact that Nabisco was willing to issue the Credit Memos, the Returned Product must have been worth the dollar amount listed upon the Credit Memos, at least to Nabisco. She argues that Nabisco made a business decision to contractually agree that Furr's would not be required to pay for returned product, and that this decision was in Nabisco's best economic interest. Having made the decision to grant such credits to Furr's, the Trustee contends that the court must consider Nabisco's contractual obligations as a part of the statutory preference analysis. The argument misses its mark. What is at issue here is the value of the product delivered to Furr's and the value of the Returned Product, not the value of the pre-petition business relationship between Furr's and Nabisco. The fact that Nabisco may have agreed to give Furr's full credit for returned product does not change the fact that the Returned Product was not saleable, and thus had no economic value at the time of its return to Nabisco.

Gonzales contends that, because it was ultimately returned to Nabisco, the Returned Product never served to replenish the estate for purposes of § 547(c)(4). Put another way, the Trustee takes the position that, due to its ultimate return, the Returned Product provided no value to the estate at the time it was delivered to Furr's. The argument ignores the rulings of the United States Court of Appeals for the Tenth Circuit as well as the Tenth Circuit Bankruptcy Appellate Panel that state that property that is transferred is valued at the time of the transfer.[26] At the time of its delivery to Furr's, the Returned Product had a value of $90,180.74. Therefore, the pre-petition estate of Furr's was increased (or, for our purposes, "replenished") by an amount equal to the value of the Returned Product at the time of its delivery. The fact that the Returned Product was returned to Nabisco after it lost its value does not change this fact, and

---

**23.** *Id.* at 261.

**24.** *Id.*

**25.** 24 B.R. 827 (Bankr.E.D.Wis.1982).

**26.** *See supra* notes 16–18.

is not relevant to the "new value" analysis.[27]

■ The Trustee contends that we should not consider ourselves bound by the dollar amount of the invoices for product supplied by Nabisco to Furr's in determining the value of the goods supplied. We note that this issue was neither framed before nor argued to the bankruptcy court.[28] We will not consider for the first time on appeal an argument that was not presented to the court below.[29] However, were we to consider the argument, we would reject it. Gonzales provided the trial court with no evidence to support her contention that the invoice price of the Returned Product did not reflect its value at the time of delivery. The statement made by the Trustee that the goods should be valued at something other than their

invoice price is inconsistent with the arguments that she made in the bankruptcy court.[30] The only evidence presented to the bankruptcy court regarding the value of the Returned Product was the parties' stipulation that the invoice price for the Returned Product was $90,180.74. The bankruptcy court can hardly be said to have committed error by relying on this stipulation, especially in the absence of any other evidence.

The Trustee also suggests that the bankruptcy court erred by not taking into account the historical rate of returned product in determining the value of the goods delivered by Nabisco to Furr's. She suggests that the actual value of the goods delivered should be determined by deducting the historical return percentage (approximately seven per cent) from the in-

27. The weakness of the Trustee's logic becomes clear when one considers the following hypothetical. Assume that goods are delivered from a buyer to a seller with no right of return with a value of $90,180.74 upon their delivery. After receipt by the buyer, for whatever reason, the goods lose their value. As a result of the loss of value, the buyer is unable to obtain any economic benefit from the purchase of the goods. Let us further assume that the buyer files bankruptcy and claims that the seller is the recipient of a preferential payment made before the goods were delivered. Under the Trustee's reasoning, the seller would not be entitled to consider the supplying of these goods as the supplying of "new value," since the buyer/debtor was unable to ultimately generate any economic benefit from the goods. "New value" would be found only when the debtor was able to turn the delivered goods into revenue. Section 547(c)(4) contains no such requirement.

28. In the "Order and Stipulation Resulting from Status Conference," which was agreed to by counsel for Furr's and Nabisco, the issue was framed in the following manner: The parties shall submit to the Court on briefs the following legal issue for determination: Of the defendants' [sic] claimed subsequent new value amount of $1,271,482.86, is it appropriate to deduct

$90,180.74 for certain "credit memos" issued by the defendant to the plaintiff during the preference period?
Order and Stipulation at 1–2, *in* Appellant's App. at 355–56. The amount of the invoices was not raised by the Trustee in the briefs that she submitted to the bankruptcy court. *See* Appellant's App. at 359–73 and 436–41.

29. *See Lyons v. Jefferson Bank & Trust,* 994 F.2d 716, 721 (10th Cir.1993) (and cases cited therein) ("We have therefore repeatedly stated that a party may not lose in the district court on one theory of the case, and then prevail on appeal on a different theory.").

30. *See* Trustee's Initial Brief to the Bankruptcy Court at 3 n. 2 ("The parties therefore agree that the $90,180.74 of preference period returns likely is a very close approximation *of the value of product Nabisco delivered during the preference period that later was returned.*") (emphasis added), *in* Appellant's App. at 362; *Id.* at 6 ("The price of goods should indicate their value, whether for 'new value' purposes or otherwise."), *in* Appellant's App. at 365; Trustee's Reply Brief at 2 ("If goods are returned, *then their value does not need to be determined,* so the cases Nabisco cites are irrelevant.") (emphasis added), *in* Appellant's App. at 438.

voice price of the goods. Gonzales notes that the dollar amount set out in the Credit Memos is in line with the historical averages for such returns. In other words, Gonzales contends that the value of the goods delivered was not their invoice price, but was in fact a lesser number. We reject this argument for several reasons. It was not properly raised to the trial court.[31] The argument is inconsistent with statements made to the bankruptcy court by Gonzales regarding the value of the Returned Product.[32] It asks the court to assume that Nabisco was in effect inflating its prices to cover the costs of returns. Nabisco was a willing seller. Furr's was a willing buyer. The invoice price reflects what a willing buyer paid a willing seller for the goods sold. The price is therefore an accurate statement of the value of the product sold.

The Trustee also asks us to make certain assumptions regarding the taxable income generated by the transactions between Furr's and Nabisco, and argues that these tax considerations support her argument that the Credit Memos must be deducted from the new value provided by Nabisco. This argument was never advanced to the bankruptcy court, and will not be considered for the first time on appeal. Moreover, Gonzales offers no legal authority in support of her theory, and no factual basis for its application. We cannot consider an argument made in such an intellectual vacuum.

## VI. *Conclusion*

The decision of the bankruptcy court is affirmed.

**31.** There is no mention of this argument in the brief initially submitted to the bankruptcy court on the new value issue. *See* Appellant's App. at 359–73. The Trustee's reply brief to the bankruptcy court contains a single paragraph that makes reference to the fact that returns are a part of the grocery business, and, therefore, the price charged by suppliers such as Nabisco must take those returns into account. *See* Reply Brief at 3, *in* Appellant's App. at 439. By placing the argument in the reply brief, Gonzales effectively eliminated the ability of Nabisco to address the argument before the bankruptcy court. We will not require Nabisco to deal with the argument here.

**32.** *See supra* note 30.