In re Craig **TIPPETT;** Christine L. Tippett, Debtors.

**Irwin Mortgage Company; Seitu O. Coleman, Appellants,**

**v.**

**Craig Tippett; Christine L. Tippett; Michael F. Burkart, Chapter 7 Trustee; United States Trustee/Sacramento; California Rural Home Mortgage Finance Authority, Appellees.**

**BAP Nos. EC–05–1086–BMaS, EC–05–1087–BMaS. Bankruptcy No. 01–26241–C–7. Adversary No. 03–02326–C.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Oct. 20, 2005.

Filed Jan. 31, 2006.

Mary E. Olden, McDonough, Holland & Allen, Sacramento, CA, for Seitu O. Coleman and Irwin Mortgage Company.

Gregory J. Hughes, Roseville, CA, for Michael F. Burkart, Ch. 7 Trustee.

Before BRANDT, MARLAR, and SMITH, Bankruptcy Judges.

## OPINION

BRANDT, Bankruptcy Judge.

Without authorization and without disclosing their bankruptcy, chapter 7[1] debtors Craig and Christine Tippett sold their home to appellant Seitu Coleman, paid off secured lienholders, and kept the net proceeds. A few months later, their trustee filed an adversary proceeding seeking turnover, quieting of title, and avoidance of the liens of Coleman's lenders, appellant Irwin Mortgage Company ("Irwin") and California Rural Home Mortgage Finance Authority ("CRHMFA") (jointly, "Lenders").

---

1. Absent contrary indication, all "Code," chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 prior to its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 119–8, 119 Stat. 23, as the case from which the adversary proceeding and these appeals arise was filed before its effective date (generally 17 October 2005).

All "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "FRCP" references are to the Federal Rules of Civil Procedure.

All "CCP" references are to the California Code of Civil Procedure.

Coleman and Irwin moved in the main case for annulment of the automatic stay under § 362(d) to give retroactive effect to the sale and the liens. After trial on stipulated facts, the bankruptcy court concluded that the transfers to Coleman and Lenders were void as violations of the automatic stay, and that, as there was no "transfer," they had no bona fide purchaser defense under § 549(c). The court also found no cause to annul the stay retroactively.

The court entered judgment in the adversary proceeding against Coleman and Lenders, declaring title to the property vested in the trustee, avoiding Lenders' liens, but granting them an equitable lien in the amount of debtors' home loan paid off in closing. It also entered an order in the main case denying annulment of the automatic stay. Coleman and Irwin appealed. CRHMFA, having defaulted in the adversary proceeding, did not participate in the appeal.

Concluding that the automatic stay of § 362 does not invalidate debtors' transfer of the property, we REVERSE the order and judgment declaring the transfer and liens void, and DISMISS as MOOT the appeal of the order denying the motion to annul.

## I. FACTS

Tippetts filed a joint chapter 7 petition in May of 2001, and appellee Michael Burkart was appointed trustee. They scheduled their residence in Sacramento County, California (the "Property") for $140,000, and two liens against it totaling $134,958. They claimed $5042 exempt under CCP § 703.140(b)(1) & (5). Soon after filing they amended their exemption in the Property to $1530, the balance of their wildcard exemption. No one recorded notice of the petition in the county recorder's office. § 549(c).

Tippetts received their discharge in November 2001, but the case remained open for determination of their disputed exemption claims and while the trustee administered other estate property. They continued to live in the Property. In early November 2002, without revealing their bankruptcy, debtors retained a realtor and listed the Property for sale for $230,000. Shortly after, and without knowing of these events, the trustee wrote to debtors' attorney requesting their cooperation in marketing the Property because he believed that there might be equity of up to $55,000 available for unsecured creditors, based on the general appreciation of real estate in 2002, and projecting a sale price of approximately $190,000. He sent a copy of his letter to debtors. There is nothing in the record or briefs evidencing any other communication between debtors and the trustee.

In April 2003, Coleman, whom all parties agree is a bona fide purchaser, bought the Property for $225,000. On 23 April he signed a purchase money note in favor of Irwin for $221,865, secured by a deed of trust on the Property, which was duly recorded with the grant deed and CRHMFA's lien of $6900. After escrow paid off $130,557.90 in prepetition encumbrances, Tippetts received net proceeds of $76,582.76, exceeding both their claimed exemption and any available to them under California law.

Upon learning from their counsel that Tippetts had sold the Property, the trustee filed an adversary proceeding against them, Coleman, and Lenders, seeking turnover of the sale proceeds under § 542, and to avoid lenders' liens and quiet title. He also sought to revoke their discharge under § 727(d)(2), for knowingly and fraudulently selling an asset of the estate and retaining the net proceeds.

Coleman and Irwin jointly moved in the main case to annul the stay under § 362(d), seeking to validate the sale and the liens. The bankruptcy court denied the motion without prejudice, continuing the final hearing pending determination of the adversary proceeding. The bankruptcy court bifurcated the adversary proceeding and has not yet ruled on discharge revocation.

After trial on stipulated facts, the bankruptcy court adopted the stipulated facts as its findings and concluded that:

(1) Tippetts willfully violated the automatic stay by exercising control over property of the estate, and Lenders violated the automatic stay (albeit not willfully) by placing liens on the Property, and thus the deed and the Lenders' liens were void ab initio;

(2) Annulment under § 362(d) was unwarranted, as there was always equity in the Property, and the court would not have granted prospective relief from the stay had it been sought before the sale; and that

(3) § 549(c) is not a defense to the trustee's action, as it is not an exception to the automatic stay and there had been no § 549(a) transfer.

Transcript, 10 February 2005, pp. 96–103.

The bankruptcy court quieted title in the trustee, but granted Lenders an equitable lien to place them in the same position as if they had purchased the note secured by the prepetition lien. *Id.* at 104–105. The March 2005 judgment, which the bankruptcy court certified as final under FRCP 54(b), applicable via Rule 7054, provided in part:

The deed from Mr. and Mrs. Tippett to Mr. Coleman ... is void, and Mr. Coleman has no ownership interest in the [Property]. The deeds of trust executed by Mr. Coleman in favor of Irwin ... and California Rural Home Mort-

gage... are void. However Irwin ... and California Rural Home Mortgage Finance Authority have an equitable lien against the [Property], to secure an obligation in the amount of $130,557.90 ... [to be paid out of sale proceeds].

The bankruptcy court expressly declined to consider (as do we) the possible availability of non-bankruptcy remedies, such as recovery for breach of escrow instructions or a claim against title insurance.

Coleman and Irwin timely appealed the Annulment Order, No. 05–1086, and Judgment, No. 05–1087. The bankruptcy court stayed both orders, allowing Coleman to remain in possession upon certain conditions, including posting a bond.

## II. JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. § 1334 and § 157(a), (b)(1), and (b)(2)(E), (G), and (K). We do under 28 U.S.C. § 158(c).

## III. ISSUE

Whether the automatic stay of § 362(a) voids debtors' unauthorized transfer of estate property.

## IV. STANDARD OF REVIEW

■ We review conclusions of law and questions of statutory interpretation, including construction of the Code, de novo. *In re Staffer,* 262 B.R. 80, 82 (9th Cir. BAP 2001), *aff'd,* 306 F.3d 967 (9th Cir.2002).

## V. DISCUSSION

■ The fundamental question presented is whether the automatic stay of § 362(a) applies to a debtor's sale of estate property. The bankruptcy court found that the transfers of the trust deed and the creation of Lenders' liens were acts in violation of the automatic stay, void ab

initio under *In re Schwartz,* 954 F.2d 569, 571 (9th Cir.1992).

The filing of a bankruptcy petition automatically stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]" § 362(a)(3). That section is applicable to all entities and would appear to bar transfer of estate property by debtors.

A debtor's legal and equitable interests at the start of the case, which are made "property of the estate" by § 541(a)(1), depend on state law. *Butner v. U.S.,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Lowenschuss,* 170 F.3d 923, 929 (9th Cir.1999); *see also In re Eisen,* 31 F.3d 1447, 1451 n. 2 (9th Cir. 1994) (debtor's assets pass to trustee upon appointment). Prepetition, Tippetts held recorded title to a fee simple interest in the Property. Appellants concede that, upon filing, equitable title passed to the trustee, and that the Property was property of the estate within the bankruptcy court's jurisdiction. Nevertheless, they argue, Tippetts continued to hold record title, *In re Cady,* 266 B.R. 172, 181 (9th Cir. BAP 2001), *aff'd,* 315 F.3d 1121 (9th Cir.2003), which they could effectively transfer.

The lynchpin of the trustee's theory is that all of debtors' interests in the Property passed to the estate upon filing, so they had no interest to transfer when they executed their deed to Coleman, and the Lenders' deeds of trust depend upon his title.

But Section 549(a) implies that debtors may effect a valid transfer:

[T]he trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2) . . . (B) that is not authorized under this title or by the court.

*See* 5 Alan N. Resnick and Henry J. Sommer, eds., *Collier on Bankruptcy* ¶ 549.02[1] (15th ed. rev.2005) ("During the period of its control the debtor or debtor in possession may dispose of property, for example by using it to pay prepetition debts or by transferring it for less than equivalent value, however improper that may be.") The proposition is that since Congress provided a mechanism to undo (or avoid) a transfer of estate property, it obviously contemplated that there could be an unauthorized transfer of estate property postpetition.

If every exercise of control over estate property which is neither excepted from the stay in § 362(b) nor done with relief from the stay granted by the court is a stay violation and thereby void, then there can never be an unauthorized postpetition transfer. *Every* postpetition transfer would be void, including those of a trustee or debtor-in-possession in the ordinary course of business, expressly authorized by § 363(c).

And the trustee's interpretation would also render § 549 largely meaningless—all that would remain would be the trustee's power to avoid under § 549(a)(2)(A) postpetition transfers *authorized* by §§ 303(f) [2] and 542(c) [3]—contrary to the tenets of statutory construction. *See FCC v. NextWave Personal Communications, Inc.,* 537 U.S. 293, 302, 123 S.Ct. 832, 154 L.Ed.2d 863 (2003)(rejecting an interpreta-

---

**2.** Business transactions by a putative debtor after the filing of an involuntary petition and before an order for relief.

**3.** Good faith transfers of estate property to third parties or payments to debtor by entities without actual knowledge or actual notice of the commencement of a case against the debtor.

tion of the Code that would render provisions inoperative); *United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 369–71, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (same). Further, to the extent they conflict, we must give effect to § 549, the more specific provision, over the more general provision, § 362. *In re Padilla,* 222 F.3d 1184, 1192 (9th Cir.2000). Finally:

> "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." Our goal in interpreting a statute is to understand the statute "as a symmetrical and coherent regulatory scheme" and to "fit, if possible, all parts into a ... harmonious whole."

*American Bankers Ass'n v. Gould,* 412 F.3d 1081, 1086 (9th Cir.2005) (citing *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 133, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000)).

But before undertaking statutory construction ourselves, we must determine what weight to give the Ninth Circuit's statement in *Schwartz,* 954 F.2d at 574, that the "automatic stay does not apply to sales or transfers of property initiated by the debtor[,]" a case in which it interpreted § 362.

We have interpreted *Schwartz* to mean that § 549 "does not apply to creditor-initiated transactions that violate the automatic stay, but only to debtor-initiated transactions that do not violate the stay." *In re Mitchell,* 279 B.R. 839, 842 (9th Cir. BAP 2002). *See also Cady,* 266 B.R. at 179 n. 4 (interpreting *Schwartz* ). While those cases involved creditor-initiated, rather than debtor-initiated, transactions, their reasoning is consistent with the canons of statutory interpretation noted above.

And the Ninth Circuit has since observed:

> The purpose of section 549 ... is to provide a just resolution when the debtor himself initiates an unauthorized postpetition transfer. The general rule in such situations is that the trustee is authorized to avoid the transfer in order to protect the creditors. ... Section 549(c) [4] creates an exception to that rule to protect innocent purchasers whom the debtor has defrauded.

*40235 Washington Street Corp. v. Lusardi,* 329 F.3d 1076, 1081 (9th Cir.2003) (citing *Schwartz;* other citations omitted). Likewise, the court in *In re Ford,* 296 B.R. 537, 547 (Bankr.N.D.Ga.2003) said:

> [T]he bankruptcy trustee's power to "*a void*" a transfer [under § 549] is the statutory power to set aside a transaction that was perfectly valid and legally effective when it occurred and remains valid until there is a judicial ruling that sets it aside. The statute specifies the legal principles under which valid transactions may be set aside, and also speci-

---

4. Which, pre-amendment (see footnote 1 above), provided:

> The trustee may not avoid *under subsection (a) of this section a transfer of real property* to a good faith purchaser without knowledge of the commencement of the case *and* for present fair equivalent value *unless* a copy or notice of the petition was filed, where a transfer of such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such property, against

whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to the interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, *unless a copy or notice of the petition was so filed before such transfer was so perfected.*

(emphasis added).

fies protections for parties that acted in good faith prior to the time that a court sets aside the transaction. That makes sense since parties *should* be protected from judicial decisions that invalidate transactions that were perfectly proper when accomplished. But obviously no party may rely on a transaction that was invalid when it occurred.

(emphasis in original). And see *In re Hill,* 156 B.R. 998, 1007–09 (Bankr.N.D.Ill. 1993):

The salient point the Trustee misses is that the automatic stay of section 362(a) and its text do not specifically prohibit the Debtor from voluntarily transferring an interest in property of the estate post-petition. Moreover, as noted in a learned treatise, "[t]he operative event cutting off the Debtor's power to dispose of its realty to a bona fide purchaser is not the order for relief. It is the recording of the petition or a notice of the petition with the local office for recording transactions in real property."

*Id.* at 1009 (quoting R. Ginsberg and R. Martin, *Bankruptcy: Text Statutes Rules,* § 906[c][2] at 9–74 (3d ed.1992)). *See also* 5 *Collier* at ¶ 549.06 (§ 549(c) is intended to protect against the fraudulent sale of estate real property by a debtor to an innocent purchaser who has no knowledge of the pending bankruptcy case).

The dispositive question is whether the Ninth Circuit's reading of § 362(a) as not barring transfers initiated by debtors is law of the circuit, *Hart v. Massanari,* 266 F.3d 1155, 1171 (9th Cir.2001), which we are bound to follow. The parties treat the Ninth Circuit's statements on the point as dicta, the trustee explicitly, and appellants implicitly—they do not assert those statements control, nor did they so argue to the bankruptcy court.

And, in fact, the *Schwartz* court was presented with a different question than we face here: the effect of a stay violation, rather than whether the stay was violated, so the quoted statement is outside the traditional concept of a "holding." *See In re Osborne,* 76 F.3d 306, 309 (9th Cir.1996) (*stare decisis* requires adherence to prior decisions—the legal consequences which follow from detailed sets of facts—rather than the rationales or statements underlying those decisions) and *compare Tate v. Showboat Marina Casino Partnership,* 431 F.3d 580, 582 (7th Cir.2005) ("[T]he holding of a case includes, besides the facts and the outcome, the reasoning essential to that outcome") (citation omitted).

But "we are not confined to the arguments of the parties on legal issues." *In re State Line Hotel, Inc.,* 323 B.R. 703, 712 (9th Cir. BAP 2005) (citation omitted), and the Ninth Circuit has recently explicated its view on the binding authority of its reasoning:

What exactly constitutes "dicta," however, is hotly contested and judges often disagree about what is or is not dicta in a particular case. *See United States v. Johnson,* 256 F.3d 895, 914–16 (9th Cir. 2001) (en banc) (Kozinski, J., concurring). In *Johnson,* Judge Kozinski explained that, "where a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense." *Id.* at 914; *accord Cetacean Cmty. v. Bush,* 386 F.3d 1169, 1173 (9th Cir.2004) (quoting *Johnson* ); *Miranda B. v. Kitzhaber,* 328 F.3d 1181, 1186 (9th Cir.2003) (per curiam) (same). Only "[w]here it is clear that a statement is made casually and without analysis, where the statement is uttered in passing without due consideration of the alternatives, or where it is merely a pre-

lude to another legal issue that commands the panel's full attention, it may be appropriate to re-visit the issue in a later case." *Johnson*, 256 F.3d at 915. Nevertheless, "any such reconsideration should be done cautiously and rarely— only where the later panel is convinced that the earlier panel did not make a deliberate decision to adopt the rule of law it announced." *Id.* If, however, "it is clear that a majority of the panel has focused on the legal issue presented by the case before it and made a deliberate decision to resolve the issue, that ruling becomes the law of the circuit and can only be overturned by an en banc court or by the Supreme Court." *Id.* at 916; *see also Cetacean Cmty.*, 386 F.3d at 1173; *Miranda B.*, 328 F.3d at 1186. This understanding of binding circuit authority was further articulated in *Barapind v. Enomoto*, 400 F.3d 744 (9th Cir.2005) (en banc) (per curiam), where we said that *when a panel has "addressed [an] issue and decided it in an opinion joined in relevant part by a majority of the panel," the panel's decision becomes "law of the circuit." Id.* at 750–51 (footnote omitted). *Padilla v. Lever*, 429 F.3d 910, 916 (9th Cir.2005) (emphasis added).

The *Schwartz* court engaged in a serious and detailed analysis of the applicability of § 362(a)'s automatic stay to transfers initiated by debtors, 954 F.2d at 573–74, and explicitly determined (en route to holding transfers in violation of the stay void) that debtor-initiated transfers were outside the stay's scope. The court focused upon that analysis, and the determination which followed was integral to the outcome, not merely some general expression in the course of the opinion. *See Central Virginia Cmty. Coll. v. Katz*, —— U.S. ——, 126 S.Ct. 990, 995–96, 163 L.Ed.2d 945 (2006). We view *Schwartz's* articulation of the respective roles of §§ 362 and 549 as law of the circuit which we must apply.

It follows that Tippetts' deed to Coleman was not void, and, as the trustee asserts no other basis for the voidness or inefficacy of their deed—he did not seek to avoid the transfer under § 549(a)—the predicate for the bankruptcy court's ruling evaporates, and we must reverse. Although the parties, on the premise that the applicability of the stay to debtor-initiated transfers remains an open question, have ably argued policy, preemption, and plain meaning, we have no occasion to reach those issues, nor to address non-binding authorities, nor to explore the ramifications of the fact that the petition was not recorded under § 549(c).

And as the automatic stay was inapplicable, the question of annulment is moot. Likewise, as we are reversing, is the challenge to the bankruptcy court's limitation of the equitable lien in favor of the lenders to the amount of the pre-petition encumbrances.

## VI. CONCLUSION

Debtors' transfer of the Property was not violative of the stay, and was effective. We REVERSE No. 05–1087 and remand for entry of judgment in favor of Coleman and the Lenders.

As the automatic stay did not bar debtors' transfer of the Property, the appeal of the Annulment Order is moot, and we DISMISS No. 05–1086.