In re Jerome Griggs BEERY, Debtor.

Yvette J. Gonzales, Trustee, Plaintiff,

v.

Jerome Griggs Beery, Joyce K. Beery, Countrywide Bank FSB, United States of America, (IRS), and First National Bank of Santa Fe, Defendants.

Bankruptcy No. 7–94–10504 SS.
Adversary No. 09–1191 S.

United States Bankruptcy Court,
D. New Mexico.

April 22, 2011.

Jerome Griggs Beery, pro se.

Clifford C. Gramer, Jr, Ronald Andazola, Albuquerque, NM, for Plaintiff.

Rachael J. Zepeda, Phoenix, AZ, for Defendants.

*AMENDED MEMORANDUM OPINION IN SUPPORT OF ORDER DENYING PARTIAL JUDGMENT ON THE PLEADINGS FILED BY FIRST NATIONAL BANK OF SANTA FE AND COUNTRYWIDE BANK, FSB (DOC 26)*

JAMES S. STARZYNSKI, Bankruptcy Judge.

The Motion by First National Bank of Santa Fe ("First National") and Countrywide Bank, FSB ("Countrywide") for Partial Judgment on the Pleadings as to § 549 Avoidance Action Set Forth [in] Counts I and II ("Motion") (doc 26) has come before the Court.[1] Movant Banks have also filed a memorandum brief in support of their position (doc 27), the Trustee Yvette Gonzales has filed a response (doc 31), and Banks have filed a reply (doc 33). Having considered the filings, the Court will deny the Motion.

**Background**

For purposes of deciding the Motion, the following facts are relevant and not disputed by the parties.

1. Debtor Jerome Beery filed his voluntary chapter 7 petition on February 25, 1994.

2. At all relevant times, Joyce Beery has been Debtor's spouse.

3. Yvette Gonzales was appointed as a successor trustee on August 15, 1995.

4. Trustee recorded a notice of the bankruptcy filing in the real estate records of Los Alamos County, New Mexico on September 13, 1995.

5. The real property at issue—565 Navajo, Los Alamos, New Mexico ("Los Alamos Residence")—is located in Los Alamos County, New Mexico.

6. There is no indication that Debtor claimed as exempt an interest in the Los Alamos Residence.[2]

7. On March 25, 1997, Trustee initiated an earlier adversary proceeding, *Gonzales v. Beery et al.*, Adv Pro 97–1059, against Debtor, Joyce Beery, Los Alamos National Bank and others, which sought a determination of the ownership of the Los Alamos Residence.

8. Trustee recorded a notice of *lis pendens* of AP 97–1059 in the real estate records of Los Alamos County on July 31, 2000.

9. Debtor executed a warranty deed for what, prior to the filing of the chapter 7 petition, had been his undivided one-half interest in the Los Alamos Property, to Joyce Beery on March 4, 2002.

10. The warranty deed from Debtor to Joyce Beery was recorded in the real estate records of Los Alamos County on March 5, 2002.

11. The Court (the Honorable Mark B. McFeeley, United States Bankruptcy Judge for the District of New Mexico, who subsequently transferred the instant adversary proceeding to this judge) issued its findings of fact, conclusions of law and judgment in AP 97–1059 on July 14, 2003, ruling that "[t]he Debtor's undivided one half interest in the Los Alamos Property

---

1. The Court is issuing this amended memorandum opinion, which replaces the Memorandum Opinion in Support of Order Denying Partial Judgment on the Pleadings filed by First National Bank of Santa Fe and Countrywide Bank, FSB (doc 38), on its own motion pursuant to F.R.B.P. 9023.

2. The Court has added this fact based on the record and the parties' filings, which make it obvious that there was no such filing.

[565 Navajo] as a joint tenant entered the Debtor's estate at the time he filed his Chapter 7 petition...." *Id.*, Judgment, at 3 of 5 (AP 97–1059 doc 195). The judgment was appealed, Notice of Appeal (AP 97–1059 doc 197), which appeal was dismissed. Mandate to Dismiss Appeal (AP 97–1059 doc 208).

12. On November 28, 2006, First National and Joyce Beery executed the loan documents whereby First National loaned Joyce Beery $320,000, repayment of which was secured by a mortgage on the Los Alamos Property.

13. On December 7, 2006, the First National mortgage was recorded in the real estate records of Los Alamos County.

14. In December, 2006 First National sold the loan package to Countrywide.

15. On May 23, 2007, Trustee sent a letter to First National informing First National of the Trustee's position that Debtor had no legal basis for transferring any interest in the Los Alamos Property and requesting that First National release from the operation of the mortgage the undivided one-half interest of the estate that had belonged to Debtor at the time of the filing of the bankruptcy petition.[3]

16. On December 11, 2007, First National sent a letter to Countrywide notifying Countrywide of Trustee's request.

17. On July 31, 2009 Trustee sent another letter to First National essentially repeating the contents of the May 23, 2007 letter.

18. On August 27, 2009, First National responded to the more recent letter from Trustee saying that it had not responded to the first letter because by the time it had received the first letter, it had sold the loan to Countrywide.

19. On November 23, 2009, Trustee filed the instant adversary proceeding, Adv Pro 09–1191, suing Debtor, Joyce Beery, First National, Countrywide, and the United States Treasury, Internal Revenue Service.[4]

20. The complaint seeks (Count I) a declaratory judgment that because the undivided one-half interest in the Los Alamos Property that Debtor purported to transfer to Joyce Beery was not effective to transfer anything, Joyce Beery's mortgage to First National was insufficient to—was void as an attempt to—transfer the estate's interest in the Los Alamos Property; (Count II) quieting of title to the one-half undivided interest in the estate; and (Count III) damages against Debtor and Joyce Beery for slander of title.

### Analysis

Banks correctly state the law in connection with a motion for judgment on the pleadings.

A motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) is treated as a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *McHenry v. Utah Valley Hosp.*, 927 F.2d 1125, 1126 (10th Cir. 1991) cert. denied, 502 U.S. 894, 112 S.Ct. 263, 116 L.Ed.2d 217 (1991) (quoting *Bishop v. Federal Intermediate*

---

**3.** To be clear, the correspondence went from Trustee's counsel to First National's counsel, as also was the case with other communications between Trustee and First National and other parties.

**4.** The Internal Revenue· Service has filed a disclaimer. Doc 14.

*Credit Bank of Wichita,* 908 F.2d 658, 663 (10th Cir.1990)), cert. denied, 502 U.S. 894, 112 S.Ct. 263, 116 L.Ed.2d 217 (1991). We review the sufficiency of a complaint de novo, and will uphold dismissal "only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." *Jacobs, Visconsi & Jacobs Co. v. City of Lawrence,* 927 F.2d 1111, 1115 (10th Cir.1991). We must accept all well-pleaded allegations in the complaint as true and "construe them in the light most favorable to the plaintiff." *Williams v. Meese,* 926 F.2d 994, 997 (10th Cir.1991).

*Mock v. T.G. & Y. Stores Co.,* 971 F.2d 522, 528–29 (10th Cir.1992).

■ Banks' argument on the merits is grounded in the notion that Trustee's only bankruptcy cause of action [5] that permits her to obtain a declaration that the actions of Debtor were not effective to transfer the property is § 549 of the Code. This section provides in relevant part as follows:

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

  (B) that is not authorized under this title or by the court.

. . .

(c) The trustee may not avoid under subsection (a) of this section a transfer of an interest in real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of an interest in such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such real property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to such interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected.

(d) An action or proceeding under this section may not be commenced after the earlier of—

  (1) two years after the date of the transfer sought to be avoided; or

  (2)the time the case is closed or dismissed.

Banks argue that from whatever point in the chain of transactions that took place one reasonably locates the "transfer" that triggers the use of § 549, this adversary proceeding was filed long after two years following the alleged transfer. (A corollary of the Bank's position is that § 549(c)

---

**5.** Because the parties at this stage argue only the invocation and effect of §§ 362 and 549 and not any state law cause of action for, as an example, quiet title or conversion, the Court does not now consider any such state law causes of action. *Cf. Jubber v. Search Market Direct, Inc. (In re Paige),* 413 B.R. 882, 916–19 (Bankr.D.Utah 2009), *aff'd Search Market Direct, Inc. v. Jubber (In re Paige),* 443

B.R. 878 (D.Utah 2011) (unauthorized transfer of estate property constituted conversion under Utah law and therefore transferee creditor did not obtain good title); *see also Irwin Mortgage Co. v. Tippett (In re Tippett),* 338 B.R. 82, 85 (9th Cir.BAP 2006) (declining to consider non-bankruptcy remedies such as recovery for a breach of escrow instructions or a claim against the title insurance).

does not come into play if Trustee is barred from pursuing § 549(a) relief.) In making the argument, Banks rely on the chronology of events set out above, the citation to § 549 in the first line of the complaint [6], and Ninth Circuit case law. Were this district located in the Ninth Circuit, Banks might well be successful, but because the Tenth Circuit requires a different result, the Motion must be denied.[7]

Banks rely on *Irwin Mortgage Co. v. Tippett (In re Tippett)*, 338 B.R. 82 (9th Cir. BAP 2006) (*"BAP Tippett"*), *aff'd*, *Burkart v. Coleman (In re Tippett)*, 542 F.3d 684 (9th Cir.2008) (*"Circuit Tippett"*). The *Tippett* cases in turn rely heavily on *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569 (9th Cir.1992), which in turn relied on the district court case of *Garcia v. Phoenix Bond & Indemnity Co. (In re Garcia)*, 109 B.R. 335 (N.D.Ill.1989). *Schwartz* and *Garcia* address the issue of whether violations of the automatic stay, listed in § 362(a), are void *ab initio* or merely voidable.

Section 362(a) provides in relevant part as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, *applicable to all entities*, of—

...

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; ....

(Emphasis added.)

The sole issue before us is whether creditor violations of the Bankruptcy Code's automatic provision are void or simply voidable. If violations of the automatic stay are void, the IRS tax assessment made against the Schwartzes in the Chapter 11 bankruptcy is without effect. If, however, such violations are merely voidable, the assessment is valid because the Schwartzes made no attempt to have the assessment voided in the Chapter 11 bankruptcy.

*Schwartz*, 954 F.2d at 570–71. *See also Garcia:*

Though acknowledging that the tax sale violated the automatic stay, the appellants argue that the Bankruptcy Court erred in concluding that acts in violation of the automatic stay are void. Rather, appellants contend that acts in violation of the automatic stay are merely voidable, provided they are avoided within the time period provided in § 549(d), which governs the avoidance of post-petition transactions not otherwise authorized by the Bankruptcy Code or court order.

*Garcia*, 109 B.R. at 337 (footnote omitted).

In each case, the court concluded that the creditors' actions at issue violated the stay and were void, not voidable. But in

---

**6.** The Court finds this argument insufficient to change a result that is dictated by the Code and Tenth Circuit case law. Indeed, Trustee cited a variety of statutes in that opening line, and then relied almost only on § 362.

**7.** Much of the case law discussed in this memorandum opinion and directly or indirectly relied on by Banks dates from prior to the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, P.L. 109–8 (2005). BAPCPA amended

§ 362(b) to add subsection (24), which excepts from the operation of the automatic stay "any transfer that is not avoidable under section 544 and that is not avoidable under section 549." Because the purported transfer from Debtor to Joyce Beery and Trustee's recordings in the Los Alamos County real estate records occurred prior to the enactment of BAPCPA, § 362(b)(24) is not applicable to this matter, and the parties have not argued otherwise.

analyzing the void/voidable issue, the *Garcia* court, and the *Schwartz* court following *Garcia*, struggled to find a role for § 549 against the background of § 362(a), and in the face of the creditor arguments that what they had done was not void but voidable, and the trustee or debtor in possession in each case had failed to timely avoid the transactions. That is, some courts had ruled that if violations of § 362(a) were void, there would be no role for the avoidance action provided by § 549, making § 549 superfluous or effectively devoid of content (as explained most clearly in *Schwartz*, 954 F.2d at 573–74). Thus, those courts had concluded that violations of § 362(a) must be voidable rather than void. *E.g., Sikes v. Global Marine, Inc.,* 881 F.2d 176, 178–79 (5th Cir.1989); *Jones v. Garcia (In re Jones),* 63 F.3d 411, 412 and n. 3 (5th Cir.1995) (listing cases and explaining "voidability" particularly in the context of annulling of the stay as permitted by § 362(d)); *compare Easley v. Pettibone Michigan Corp.,* 990 F.2d 905, 910 (6th Cir.1993) (actions taken in violation of automatic stay are "invalid" and voidable, but shall be voided absent limited equitable circumstances).

So it was in this context that the *Garcia* court contrived a solution to the problem it saw:

> Holding that, absent specific statutory exception, *see, e.g.,* § 549(c), actions in violation of the automatic stay are void, rather than merely voidable, is not as appellants contend, necessarily irreconcilable with § 549, which requires that actions by the trustee to avoid post-petition transactions be commenced the earlier of the time the bankruptcy case is closed or dismissed or two years after the transaction sought to be avoided. § 362(a) prevents creditors from dismembering the bankruptcy estate through actions which do not require the post-petition cooperation or consent of

the debtor. Concluding that § 549(d) does not limit the period in which a transfer may be challenged as in violation of § 362(a) does not render § 549(d) a nullity, but rather leaves an entire realm of post-petition transfers subject to the time limitations on avoidance contained in § 549(d). These are post-petition transfers in which the debtor is a willing participant but which, though not prohibited by the automatic stay, are not otherwise authorized by the Bankruptcy Code.

*Garcia,* 109 B.R. at 339 (citation and footnotes omitted).

*Schwartz* adopted this approach:

> On the surface, [the supposed conflict between §§ 549 and 362] appears troublesome. However, a straightforward analysis of section 549 reveals that it is not intended to cover the same type of actions prohibited by the automatic stay nor rendered moot by section 362's voiding of all automatic stay violations. Section 549 applies to unauthorized transfers of estate property which are not otherwise prohibited by the Code. *Garcia,* 109 B.R. at 338–40; *In re R & L Cartage & Sons,* 118 B.R. 646, 650–51 (Bankr.N.D.Ind.1990) (adopting *Garcia* analysis). In most circumstances, section 549 applies to transfers in which the debtor is a willing participant. *See Garcia,* 109 B.R. at 339. For example, in a transfer unrelated to any antecedent debt, the debtor may sell a portion of the estate's property to a third person. The trustee has the power to avoid such a transfer under section 549. Section 362's automatic stay does not apply to sales or transfers of property initiated by the debtor. Thus, section 549 has a purpose in bankruptcy beyond the potential overlap with section 362. In other words, the automatic stay can void

any violation and still leave section 549 with a valid and important role in bankruptcy. Section 549 exists as a protection for creditors against unauthorized debtor transfers of estate property. Although there are circumstances where section 362 overlaps section 549 and renders it unnecessary, this overlap falls far short of rendering section 549 meaningless.

*Schwartz,* 954 F.2d at 573–574.

In each case, *Garcia* and *Schwartz,* the transactions that were challenged occurred when the debtors were debtors in possession in chapter 11 cases. *Garcia,* 109 B.R. at 336; *Schwartz,* 954 F.2d at 570. Nevertheless both courts in their discussions refer only to "debtors" rather than debtors in possession. And in neither case did the debtors themselves take any action that constituted the transfer in question. *Garcia,* 109 B.R. at 336 (public sale of estate property for past due real estate taxes); *Schwartz,* 954 F.2d at 570 (IRS assessment of 100% tax penalty postpetition).

But given the (perhaps too loose) phrasing used by both courts, the *Garcia/Schwartz* argument appears to have led the Ninth Circuit courts astray. The Tippetts, after filing their chapter 7 case, hired a realtor and sold their home without anyone's permission. *BAP Tippett* at 83. Unfortunately for the chapter 7 trustee (and the unsecured creditors), the trustee had failed to record a notice of the filing of the bankruptcy case in Sacramento County, California, where the property was located. *Id.* at 84; *Circuit Tippett* at 686. In consequence, the purchaser apparently took for value and in good faith. Shortly after the sale the chapter 7 trustee filed an action seeking turnover under § 542 (and not § 549), to quiet title, and to avoid the

liens of purchaser's mortgagees. The purchaser and the mortgagees sought an annulment of the stay to retroactively validate their purchase. The bankruptcy court denied annulment, and granted judgment for the Trustee in the adversary proceeding.

The BAP reversed, holding that "[t]he proposition is that since Congress provided a mechanism to undo (or avoid) a transfer of estate property, it obviously contemplated that there could be an unauthorized transfer of estate property postpetition." *BAP Tippett* at 86. The court went on to reason that if every exercise of control over estate property which was not excepted from operation of the stay or was unauthorized constituted a violation of the stay and was therefore void, there could never be a postpetition unauthorized transfer to be undone. And that would make § 549 largely meaningless as well. *BAP Tippett* at 86–87.[8]

But unlike the Garcias and the Schwartzes, the Tippetts were never in charge of their bankruptcy estate. In consequence, there was never a basis for arguing that they acted on behalf of the estate. That was a crucial difference between the underlying facts in *Garcia* and *Schwartz* on the one hand and the *Tippett* cases on the other hand. Thus, to the extent that *Garcia* and *Schwartz* do not distinguish between debtors versus debtors in possession, those cases also state the principle too broadly to be taken at face value.

▋ In their repeated citations to one of the purposes of the automatic stay—to protect the estate from being dismembered by creditors—the *Garcia, Schwartz* and *Tippett* cases appear to overlook the

---

**8.** *Circuit Tippett* dealt largely with the Code not preempting the California state recording statute, which provides for first in time filing

determining the priority of the lien claims. *Id.,* 542 F.3d at 689–690.

obvious: it is also the trustee who is entitled to the protection of the automatic stay in order to preserve the estate intact. That is, in a chapter 7 case, a debtor can wreak as much havoc on the estate as can a creditor (as amply illustrated by these proceedings). In consequence, there is nothing in § 362(a) which says that its provisions are limited only to creditors and in the process excepting chapter 7 debtors (or chapter 11 debtors out of possession) from the prohibitions of § 362(a).

It is well accepted that the automatic stay not only protects the debtor's attempt to repay his debts or reorganize his financial affairs by giving the debtor a respite from creditor demands, *In re Parr Meadows Racing Assn.*, 880 F.2d 1540, 1545 (2nd Cir.1989); *In re Ionosphere Clubs, Inc.*, 105 B.R. 765, 771 (Bankr.S.D.N.Y.1989), but it also protects creditors by preventing dismemberment of the estate. *Martin–Trigona v. Champion Federal Savings and Loan Asso.*, 892 F.2d 575, 577 (7th Cir.1989); *In re Sky Group International, Inc.*, 108 B.R. 86, 89 (Bankr.W.D.Pa.1989). Purposely, the automatic stay maintains the status quo, to ensure an orderly distribution of estate assets, *In re Vitreous Steel Products Co.*, 911 F.2d 1223, 1231–32 (7th Cir.1990); *In re Dohm*, 14 B.R. 701, 702 (Bankr.N.D.Ill.1981), and, more importantly, facilitate the administration of the estate by allowing the court to resolve claims and distribute assets in accord with priorities recognized in the Code. *Vitreous Steel Products Co.*, 911 F.2d at 1231–32. The majority of Circuit Court cases hold that acts in violation of the automatic stay are void and without effect. *In re Calder*, 907 F.2d 953, 956 (10th Cir.1990); *In re Taylor*, 884 F.2d 478, 483 (9th Cir.1989); *In re Smith*, 876 F.2d 524, 525–26 (6th Cir. 1989); *In re Ward*, 837 F.2d 124, 126 (3rd Cir.1988). The court will not toler-

ate unauthorized acts by debtors or creditors by allowing possession of, or facilitating the exercise of control over, or permitting the dismemberment of property of the estate outside the provisions of the Code. To do so would make a nullity of § 362 and what it attempts to accomplish as well as invite horrendous fraud upon the court.

*Yorke v. Citibank, N.A. (In re BNT Terminals, Inc.)*, 125 B.R. 963, 971 (Bankr. N.D.Ill.1991).

As for concerns that treating any violation of § 362(a) as void will leave nothing for § 549, one could easily imagine a situation in which a debtor in possession on behalf of the estate and therefore not as a third party (the category of such third parties including creditors but also an out of possession debtor whether in chapter 7 or chapter 11), uses cash collateral without the agreement of the parties having an interest in the cash collateral and without court approval, and then finds the case in the charge of a chapter 7 or chapter 11 trustee who invokes § 549 to recover payments made with illegally used cash collateral. That is exactly what happened in *Marathon Petroleum Co., LLC v. Cohen (In re Delco Oil, Inc.)*, 599 F.3d 1255 (11th Cir.2010) (affirming judgment requiring creditor to return cash to estate pursuant to §§ 549(a) and 363(c)(2) arising from debtor in possession's unauthorized use of cash collateral). *Delco Oil* is an example of an appropriate use of § 549 by a trustee because the transfer by the former debtor in possession of the cash collateral would not have been authorized by statute but also would not have been a violation of the automatic stay. A similar example would be the sale of property by a chapter 11 debtor in possession without court permission; such a sale need not be attacked by a § 549 action because the transaction is already void under § 362. *In re BNT*

*Terminals, Inc.,* 125 B.R. at 971–7. "The Trustee need not void an already void transfer." *Id.* at 973.[9]

■ From what has been said, it is also clear that whether the debtor was a "willing participant" in the alleged transfer makes no difference, and does not convert an attempted transfer in violation of the automatic stay into a transfer only voidable by § 549. *Contra Paige,* 413 B.R. at 915. This follows because there is nothing in § 362(a) which provides any basis for treating a chapter 7 debtor attempting to transfer property of the estate any differently than a creditor attempting to do the same.

■ The Tenth Circuit has repeatedly ruled that actions taken in violation of the stay are void *ab initio,* not merely voidable. *Ellis v. Consolidated Diesel Electric Corp.,* 894 F.2d 371, 372 (10th Cir.1990) (summary judgment for defendants in product liability action void when it was entered by district court after defendants had filed chapter 11 petitions; plaintiffs' appeal of summary judgment dismissed for lack of properly entered final judgment); *Franklin Sav. Assoc. v. Office of Thrift Supervision,* 31 F.3d 1020, 1022 (10th Cir. 1994) (bill of costs submitted in district court case postpetition; request for annulment of stay denied and government required to resubmit bill of costs); *Goldston v. United States (In re Goldston),* 104 F.3d 1198, 1201 (10th Cir.1997) (IRS assessment in violation of stay during chapter 11 case was void in subsequent chapter 13 case; "void is void, whatever the context".

Sanction was for IRS to lose its secured status.); *see Kalb v. Feuerstein,* 308 U.S. 433, 438, 60 S.Ct. 343, 84 L.Ed. 370 (1940) (Wisconsin state court did not have jurisdiction to confirm sheriff's sale and dispossess farmer debtors who had filed bankruptcy petition). The Bankruptcy Court for the District of Utah summarized it well:

> In the Tenth Circuit, actions taken in violation of the automatic stay are void ab initio, and knowledge of the stay on the part of the offending party is irrelevant. As such, they are without legal effect. From the law's point of view, they simply did not happen.

*Paige,* 413 B.R. at 915 (footnotes omitted).

The one arguable exception to this long list of Tenth Circuit cases is *Calder v. Job (In re Calder),* 907 F.2d 953, 956–57 (10th Cir.1990). In that case the debtor engaged in lengthy state court litigation with a third party who was unaware of the bankruptcy filing, and it was only after having a judgment entered against him in the state court matter that debtor Calder informed the third party that he had been in bankruptcy all along and thus the state court litigation and judgment were all void. In those circumstances, essentially on equitable or "clean hands" grounds, the Tenth Circuit refused to enforce the stay.

Strictly speaking, none of the Tenth Circuit cases involved an out-of-possession debtor who "willingly" violated the automatic stay, as did the Tippetts.[10] So it is conceivable that the Tenth Circuit, faced with exactly these facts, might take the

---

9. In the instant case of course, the purported transfer was by a debtor out of possession and in consequence constituted a violation of the stay.

10. Although the *Paige* courts, particularly the bankruptcy court, discussed the effect of an out-of-possession debtor who "willingly participates" in an attempted unauthorized transfer of estate property and stated that in those circumstances the transfer would be voidable by § 549, rather than void, 413 B.R. at 913–14 (citing *Garcia*), the bankruptcy court found that there was no willing participation by the debtor and therefore § 549 was not applicable. *Id.* at 915.

same position as the *Tippetts* cases. But given the single strand that runs through all the Tenth Circuit cases of declaring stay violations void *ab initio*, and given the unnecessary and unsupported conceit that the *Tippetts* cases and their provenance have created, that would seem to be quite unlikely. Particularly is that the case here where an out-of-possession (chapter 7) debtor has acted to cause so much mischief for so many parties.

Nor is the Tenth Circuit likely to yield to other circuits that view stay violations are voidable rather than void. For example, in *Sikes*, 881 F.2d at 178–79, plaintiffs/appellants had filed a personal injury claim against defendant who had, unknown to plaintiffs, filed a chapter 11 petition. Defendant maneuvered to preclude the modification of the stay to allow the refiling of the complaint until after the statute of limitations had passed. The Fifth Circuit, in a divided ruling, first held that "the term 'void' can only be properly applied to those [transactions] ... that are of no effect whatsoever, mere nullities, ... and therefore incapable of confirmation or ratification [including by annulment]." *Id.* at 178 (quotation marks and citation omitted). The court also held that the bankruptcy court had modified the stay after the fact, which it could not do if stay violations were void rather than voidable. On that basis, the court held generally that violations of the stay are voidable, not void, and found support for its reasoning in part in the existence of § 549.

The Tenth Circuit case law, *e.g., Franklin Sav. Assoc. v. Office of Thrift Supervision* and *In re Goldston,* in which the courts consider as possible but then reject requests to annul the stay, resolves that dilemma. In addition, *Calder* provides

sufficient support for dealing with the one-off case in which a debtor has (or, for that matter, a trustee might have) so misled a party or gamed the system that a rigid application of the principle that violations of the stay are "void" would be unfair.

In *Easley v. Pettibone Michigan Corp.,* 990 F.2d 905 (6th Cir.1993), plaintiff/appellant filed an action, just days before the statute of limitations was to expire, against defendant/debtor in possession after the latter in 1986 had filed a chapter XI [sic] petition. *Id.* at 907. Debtor confirmed a plan permitting personal injury actions to go forward, and then removed the Easley action to the United States District Court. There, it moved to dismiss the action based on the fact that the original filing was in violation of the stay. The district court refused to dismiss the action. The reorganized debtor then took an interlocutory appeal, asserting that the district court had no jurisdiction over the removed action. The Sixth Circuit held that the action, filed postpetition, could not be considered commenced until the stay had been modified by the bankruptcy court, and that the reorganized debtor could raise this issue in the removed proceeding in the district court, *id.* at 908, and that plaintiff's failure to timely refile, when he had been informed of the void filing, cost him his right to sue. *Id.* at 912. The court ruled that "actions taken in violation of the stay are invalid and voidable and shall be voided absent limited equitable circumstances." *Id.* at 911.

The Sixth Circuit's position is in practice remarkably similar to that of the Tenth Circuit, as illustrated in part by its favorable citation to *Calder.* Thus, despite the use of terms such as "invalid"[11] and "voidable", the Sixth Circuit's position would

---

**11.** The Fifth Circuit used the same term in *Bustamante v. Cueva (In re Cueva),* 371 F.3d 232, 236 (5th Cir.2004).

not be likely to alter that of the Tenth Circuit.[12]

■ In any event, Trustee in this case filed a notice of the bankruptcy filing and a notice of lis pendens in the Los Alamos County records long before Debtor attempted the transfer of the property to Joyce Beery.[13] Thus, were Trustee required to file an action under § 549(a) to recover the half interest in the real property (which she is not), her claim could not be defeated by an innocent purchaser defense as provided in § 549(c).

> As subsection (a) and (d) make clear, section 549 concerns avoidance actions by the trustee, not transfers that are already void under the automatic stay. Subsection (c), which Lusardi invokes, prevents such avoidance actions from succeeding against certain bona fide purchasers. By its terms, subsection (c) creates an exception only to subsection (a). 11 U.S.C. § 549(c) (describing transfers that "trustee may not avoid under subsection (a) of this section"). Thus, as *[Value T Sales, Inc. v. Mitchell (In re Mitchell)*, 279 B.R. 839, 841–44 (9th Cir. BAP 2002)] noted, the language and the structure of both section 362 and section 549 support the view that section 549(c) does not create an exception to the automatic stay provision.

*40235 Washington Street Corp. v. Lusardi*, 329 F.3d 1076, 1081 (9th Cir.2003). *Accord, In re Cueva*, 371 F.3d at 236, 238 ("In short, § 549(c) is not an exception to the automatic stay imposed by § 362. . . .").[14]

## Conclusion

For the foregoing reasons, the Court finds that Trustee was not bound in any way by § 549, including any statute of limitations therein. Therefore the Motion by First National Bank of Santa Fe and Countrywide Bank, FSB for Partial Judgment on the Pleadings as to § 549 Avoidance Action Set Forth [in] Counts I and II (doc 26) is not well taken and will be denied.

---

**12.** The Sixth Circuit also suggested that treating actions in violation of the stay as merely voidable would necessitate little additional effort on a trustee's part than if a transaction were considered void from the outset. *Easley*, at 910. This adversary proceeding, and a good part of the proceedings in the underlying chapter 7 case, amply evidence how erroneous that observation is.

**13.** The Court has listed the facts in ¶¶ 7, 8 and 11 in part because of Banks' argument that the doctrine of *res judicata* means they are not bound by the ruling in AP 97–1059. Although Banks were not parties to the litigation, they would have been on notice of that pending

litigation and the judgment arising out of it. As the Tenth Circuit case law cited above makes clear, whether Banks even knew of the litigation, much less participated in it, is irrelevant, since Debtor's purported transfer was void. In any event, Joyce Beery was a party to that adversary proceeding, and Banks took from her.

**14.** To be clear, however, both *Lusardi* and *Cueva* continue the distinction between creditor-initiated versus debtor-initiated postpetition transactions as the *raison d'etre* for § 549. *Lusardi*, 329 F.3d at 1081–82; *Cueva*, 371 F.3d at 236.