**In re C.W. MINING COMPANY, Debtor.**

**Kenneth A. Rushton, Trustee, Plaintiff–Appellant,**

v.

**Bank of Utah, Defendant–Appellee,**

and

**Bank of Utah, Third–Party– Plaintiff–Appellee,**

v.

**Hiawatha Coal Company, Inc., and P.P.M.C., Inc., Third–Party– Defendants–Appellees.**

BAP No. UT–11–098.
Bankruptcy No. 08–20105.
Adversary No. 10–02712.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Sept. 5, 2012.

---

111. *See* Fed. R. Bankr.P. 8013.

Michael N. Zundel (T. Edward Cundick with him on the brief) of Prince, Yeates & Geldzahler, Salt Lake City, UT, for Plaintiff–Appellant.

Steven J. McCardell (David F. Klomp and Jessica G. Peterson with him on the brief) of Durham Jones & Pinegar, P.C., Salt Lake City, UT, for Defendant–Appellee.

Before NUGENT, KARLIN, and HALL *, Bankruptcy Judges.

## OPINION

HALL, Bankruptcy Judge.

Before the Court is the appeal of Appellant Kenneth A. Rushton, Trustee ("Trus-

---

* Honorable Sarah A. Hall, United States Bankruptcy Judge, United States Bankruptcy Court for the Western District of Oklahoma, sitting by designation.

tee"), of the bankruptcy court's Memorandum of Decision which granted Appellee Bank of Utah's ("Bank") motion for summary judgment and denied Trustee's motion for summary judgment. For the reasons that follow, the Court AFFIRMS the bankruptcy court's decision.

## I. Jurisdiction

This Court has jurisdiction over the instant appeal under 28 U.S.C. § 158(b) because: the appeal was timely made pursuant to Rule 8002(a) of the Federal Rules of Bankruptcy Procedure; the challenged order is a final order; and no party has elected to have the appeal heard by the district court as required by 28 U.S.C. § 158(c).

## II. Standard of Review

■ "The applicable standard of review for orders granting summary judgment is *de novo*, and this Court is required to apply the same legal standard as was used by the bankruptcy court to determine whether either party is entitled to judgment as a matter of law." [1]

## III. Background

The pertinent facts in this case are undisputed as set forth more fully in the bankruptcy court's findings of fact.[2] Although the bankruptcy case and related adversary proceedings are complex, and both parties burdened the record with many extraneous and irrelevant fact allegations, the relevant facts necessary for this Court's analysis are relatively simple and straightforward.

Debtor C.W. Mining Company ("Debtor") operated a coal mine. To finance the purchase of certain equipment, Debtor entered into three loan agreements ("Debtor Loans") with Bank. Debtor executed promissory notes for each loan agreement (the "Notes"). The interest rate was in excess of 4.31 percent. The Notes were secured by the purchased equipment, and all of the Notes contained cross-collateralization provisions.[3] Thus, collateral securing one Note also secured all other Notes. An entity named P.P.M.C., Inc. ("PPMC") guaranteed the Debtor Loans.

In August 2007, Debtor entered into a letter of credit transaction with Bank in order to obtain an irrevocable standby letter of credit in favor of the Utah Department of Natural Resources Division of Oil, Gas, Mining, and Office of Surface Mining ("DOGM"). Pursuant thereto, Debtor deposited $362,000 with Bank, and Bank in turn issued a certificate of deposit ("CD") with a 4.31 percent interest rate. Debtor also executed a promissory note in favor of Bank in the amount of $362,000 with an interest rate of 6.75 percent (the "CD Note"). Debtor's obligation under the CD Note was secured by an assignment of the CD, and the CD Note also contained a cross-collateralization provision.[4] As a consequence, the CD Note was also secured by the collateral securing the Notes. Bank then issued the letter of credit to DOGM.

On January 8, 2008, an involuntary Chapter 11 petition was filed against Debtor.[5] The bankruptcy court entered an or-

---

1. *In re Rafter Seven Ranches L.P.,* 414 B.R. 722, 731 (10th Cir.BAP2009).

2. *See Rushton v. Bank of Utah (In re C.W. Mining Company),* 465 B.R. 226, 229–230 (Bankr.D.Utah 2011).

3. Affidavit of Dan Boren at ¶¶ 4–16, *in* Appellant's Amended Appendix ("Aplt. App.") at 00885–90.

4. *Id.* at ¶¶ 13–16, *in* Aplt. App. at 0888–90.

5. Bankruptcy Docket, Dkt. No. 1, *in* Aplt. App. at 0296.

der for relief in the involuntary Chapter 11 case on September 26, 2008.[6] Thereafter, on November 13, 2008, Debtor's Chapter 11 case was converted to one under Chapter 7, and Trustee was appointed as the Chapter 7 trustee.[7]

Subsequently, Bank did not renew the letter of credit.[8] On February 19, 2009, Bank liquidated the CD (which had a value of $383,099) and applied $79,487 and $303,612 on two of the Notes in partial satisfaction of its claims ("Transfer").[9] Bank was aware of the pending bankruptcy when it made the Transfer and reduced the outstanding balance of the Notes.[10] Bank later sold the Debtor Loans, the outstanding balance of which had been previously reduced by the Transfer, to PPMC and assigned all of its interest in the Debtor Loans and related documents to PPMC.[11]

Trustee brought his complaint against Bank on September 14, 2010, seeking a money judgment for $383,099 on two claims: (1) avoidance of the Transfer under 11 U.S.C. § 549[12] as an unauthorized post-petition transfer and recovery of $383,099 under § 550(a)(1); and (2) a declaration that the Transfer was void as a violation of the automatic stay under § 362(a) and for an order directing turnover of $383,099 under § 542.[13]

The parties filed cross-motions for summary judgment.[14] The bankruptcy court denied Trustee's motion for summary judgment and granted Bank's motion for summary judgment.[15] Trustee then timely brought this appeal.

## IV. *Analysis*

### A. *Trustee's Argument*

Trustee's complaint seeks relief on two claims: (1) avoidance of the Transfer under 11 U.S.C. § 549 and for recovery of $383,099 under 11 U.S.C. § 550; and (2) a declaration that the liquidation of the CD is void as a violation of the automatic stay pursuant to 11 U.S.C. § 362(a) and that Trustee is entitled to the CD as an asset of the bankruptcy estate. Both claims ask that Bank be required to pay Trustee $383,099 free and clear of Bank's lien.

Trustee's first prong of attack is that the Transfer, if not deemed void under § 362, is avoidable as an unauthorized post-petition transfer under § 549. Thus, Trustee contends he is entitled, under § 550, to a money judgment for the value of the CD. Trustee argues that Bank does not have a

6. *Id.*, Dkt. No. 204, *in* Aplt. App. at 0273.

7. *Id.*, Dkt. No. 274, *in* Aplt. App. at 0265.

8. Affidavit of Dan Boren at ¶¶ 13–16, *in* Aplt. App. at 0888–90, and Exhibit K thereof at 0961.

9. Affidavit of Dan Boren at ¶ 27, *in* Aplt. App. at 0892; Bank of Utah Transaction Documents, *in* Aplt. App. at 0840.

10. Bank alleges it made the Transfer under the mistaken, but good faith belief that a sale of its collateral to Hiawatha Coal Company had been approved. It maintains that it effectuated the Transfer at the direction of Debtor's management and buyer. Affidavit of Dan Boren, ¶¶ 22 and 27, *in* Aplt. App. at 0891, 0892. The veracity of these contentions is not necessary for the determination of the issues on appeal.

11. Affidavit of Dan Boren at ¶¶ 28–9, *in* Aplt. App. at 0892.

12. All subsequent statutory references are to Title 11 of the United States Code, unless otherwise noted.

13. Adversary Proceeding Docket, Dkt. No. 1, *in* Aplt. App. at 0011.

14. Adversary Proceeding Docket, *in* Aplt. App. at 0001–11.

15. The bankruptcy court's decision was published at *C.W. Mining,* 465 B.R. 226.

lien against the CD since it made the ill-advised decision to liquidate the CD and apply the proceeds to the Debtor Loans without prior court approval and then sold the reduced balance Debtor Loans to PPMC. In other words, Bank "cannot escape the consequences of that act."

Under his second prong, Trustee insists that Bank's liquidation of the CD was void, that is without legal effect, and that the CD remained property of the bankruptcy estate. Because the CD represents an obligation of Bank to the bankruptcy estate, and it is as if the liquidation and offset never occurred due to the automatic stay, then Bank, as a matter of law, still owes a debt to the bankruptcy estate. Consequently, Bank should be required to turnover the value of the CD to Trustee under § 542. Trustee's argument goes even further and posits that Bank no longer enjoys the position of a secured creditor, because through its own poor business decisions and no fault of anyone else, it sold the Debtor Loans to PPMC.

Trustee contends that the bankruptcy court erred when it denied his motion for summary judgment. He argues that the bankruptcy court erroneously concluded it would be pointless to order turnover of the CD or its value because Bank was a secured creditor and would be entitled to have its lien recognized. Trustee rejects the bankruptcy court's conclusion that granting relief for Trustee would be tantamount to stripping Bank of its lien, would be punitive in nature, and would create an inequitable windfall for the bankruptcy estate. Finally, Trustee also rejects the bankruptcy court's conclusion that relief under either of Trustee's claims would be pointless because it would not benefit the bankruptcy estate.

### B. *Bank's Argument*

Bank counters that Trustee's claims under § 362 and § 549 are mutually exclu-

sive but, regardless, Trustee cannot prevail under either theory of recovery for several reasons. First, with respect to the §§ 549 and 550 claim, § 550(a) explicitly requires that any recovery by Trustee be for the benefit of the bankruptcy estate. Bank contends there would be no benefit to the bankruptcy estate because it would remain a secured creditor if the Transfer were avoided since doing so would return the parties to the status quo before the Transfer was made. If the pre-Transfer status quo were re-imposed, then Bank not only would have an obligation to Debtor by virtue of the CD, but Bank would also have a secured interest in the CD since its lien would be revived. In that instance, administering the CD through the bankruptcy estate would not result in any augmentation of the bankruptcy estate. More importantly, the only party in interest that would recognize any true financial gain from avoidance and recovery would be Trustee.

Next, Bank claims that adopting Trustee's argument that its lien would not be revived—that it no longer has a valid secured position because it sold its Debtor Loans to PPMC after the Transfer—would constitute an unconstitutional taking. Indeed, under Trustee's argument, Bank would no longer be considered even an unsecured creditor because it is no longer the holder of the Notes, and the net result would be a windfall to the bankruptcy estate.

With respect to Trustee's §§ 362 and 542 claim, Bank submits that the bankruptcy court's powers to fashion remedies for violations of the automatic stay are circumscribed by the Bankruptcy Code itself and include remedial measures in only limited circumstances not otherwise applicable. Bank further asserts that Trustee's requested relief under § 362 would only be

punitive in nature because Trustee does not and cannot allege any actual damages.[16]

### C. *Summary of Bankruptcy Court's Decision*

The bankruptcy court concluded that Trustee's requested relief (under either §§ 549 and 550 or under §§ 362 and 542) would "effectively 'strip' the Bank's lien from its collateral and deprive the Bank of the amount it was legally entitled to at the time of the $383,099 Transfer.... The result does not return the parties to the status quo, is unrelated to any damages, is clearly punitive in nature, and creates a windfall for the bankruptcy estate."[17]

In reaching this conclusion, with respect to the §§ 549 and 550 claim, the bankruptcy court determined that a transfer by a fully secured creditor may not be avoided under § 549 without reviving the secured creditor's lien. The bankruptcy court then concluded that Trustee could not recover any money judgment under § 550 because there would be no benefit to the bankruptcy estate from avoidance and recovery, a requirement of the plain meaning of § 550.[18]

As to Trustee's §§ 362 and 542 claim, the bankruptcy court characterized § 362 as a "prohibitory statute, not a remedial one."[19] While § 362(k) contains limited remedial powers, Trustee was not entitled to relief under § 362(k) since he was not an "individual injured by any willful violation of the stay" as used in that section. Although Trustee did not seek such relief, the bankruptcy court noted it could not

order turnover of the CD free and clear of Bank's lien pursuant to its civil contempt powers under 11 U.S.C. § 105(a) since such would effectively create a substantive right not included in the Bankruptcy Code and would be overly punitive.

Painstakingly, the bankruptcy court then parsed the meaning of "void" and concluded that declaring the Transfer void for violating the stay would necessitate returning the parties to the status quo before the Transfer was made. Returning the parties to the status quo, however, would require not only returning the CD and/or its value to Trustee but also reviving Bank's lien on the CD and would, therefore, be an exercise of futility. Moreover, the relief requested by Trustee (turnover of the value of the CD without reviving Bank's lien) was not supported by § 362(a) (or § 105 (although Trustee did not seek relief under such section)). Without any proof of damages from the stay violation, Trustee failed to state a cause of action under § 362(a).

The bankruptcy court separately addressed Trustee's turnover claim under § 542(a), concluding that Bank was not subject to turnover because the CD was of inconsequential value or benefit to the estate. Even if Bank was ordered to turnover the CD, as a fully secured creditor, Bank would be entitled to adequate protection and eventual distribution of the value of its secured claim. As such, Bank would be entitled to receive exactly what it would be forced to turnover to the bankruptcy estate, a procedure that would be pointless. As noted by the bankruptcy court, money would simply flow into the estate,

---

16. Bank also contends that Trustee raises new arguments on appeal that the Court should disregard. The Court need not consider the merits of whether Trustee raises new arguments on appeal as there are sufficient substantive grounds to affirm the decision of the bankruptcy court.

17. *C.W. Mining,* 465 B.R. at 230–31.

18. *Id.* at 231–34.

19. *Id.* at 235.

Trustee would generate fees, and Trustee would distribute the same funds (although likely a lesser amount due to Trustee's fees and expenses) back to Bank, with no net gain to anyone other than Trustee.

With this analysis in mind, the bankruptcy court granted summary judgment in favor of Bank and against Trustee.[20] The bankruptcy court's decision is thorough, well-reasoned and persuasive.

### D. The Bankruptcy Court Correctly Concluded That Bank Was Entitled to Summary Judgment In Its Favor

#### 1. Trustee's Claim Under §§ 549 and 550 Fails.

a. *No Legitimate Reason Exists to Avoid the Post–Petition Transfer to Bank under §§ 549, 550 and 502(h).*

 Section 549 provides:

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.[21]

Section 549 is meant "to ensure that similarly situated pre-petition creditors are treated even-handedly."[22]

While § 549 allows a trustee to avoid a post-petition transfer, § 550 contains the statutory mechanism to recover the asset transferred or, as in this case, its value. Section 550(a) provides that:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.[23]

Section 549(a) and § 550(a) cannot be viewed in isolation.

Rather, the Bankruptcy Code provides a comprehensive process for avoidance, recovery and protection of a transferee's claim priority and status. Section 549 addresses avoidance; § 550 addresses recovery; and § 502(h) addresses protection of a claim's status and priority. Trustee's arguments run contrary to the plain language of the Code and the overall purpose of the avoidance-recovery-claim protection scheme. It was with this complete statutory scheme in mind that the bankruptcy court concluded Bank was entitled to summary judgment on the post-petition transfer claim.

The bankruptcy court correctly followed the line of cases holding that it is pointless to avoid, under § 549, a post-petition transfer to a secured creditor in satisfaction of all or part of the secured claim

---

20. *Id.* at 234–42.

21. 11 U.S.C. § 549(a). As an aside, some courts would not apply § 549 to the Transfer, finding that § 549 does not apply to transfers already void by virtue of the automatic stay. *Gonzales v. Beery (In re Beery),* 452 B.R. 825, 836 (Bankr.D.N.M.2011).

22. *Butler v. Anderson (In re C.R. Stone Concrete Contractors, Inc.),* 462 B.R. 6, 27 (Bankr. D.Mass.2011) (internal quotation marks omitted); *Dave Noake, Inc. v. Harold's Garage, Inc. (In re Dave Noake, Inc.),* 45 B.R. 555, 557 (Bankr.D.Vt.1984).

23. 11 U.S.C. § 550(a).

because the creditor's lien would necessarily be revived and the creditor would be restored to its secured status under § 502(h).[24] Numerous courts [25] have concluded that it would be futile, and of no benefit to the bankruptcy estate, to order recovery of an unauthorized post-petition transfer from a secured creditor since the creditor's lien would be revived by the avoidance.[26]

■ Ordering avoidance and recovery under these circumstances is pointless because the secured creditor would simply pay money over to the bankruptcy estate or trustee who, in turn, would then be required to return to the secured creditor the value of its secured claim.[27] *The purpose of § 549 is to allow a trustee to* *avoid post-petition transfers which deplete the estate.*[28] So, where as in this case, there was no actual depletion of the bankruptcy estate by the admittedly unauthorized post-petition Transfer, avoidance and recovery does not fulfill the purpose of § 549(a).

■ The same analysis applies equally to recovery under § 550(a). As the bankruptcy court noted, the purpose of § 550 is to restore the estate to the financial condition in which it would have been had the transfer not been made.[29] The proper focus of recovery under § 550(a) is not on what the transferee gained but rather on what the bankruptcy estate lost as a result of the transfer.[30]

---

**24.** *C.W. Mining,* 465 B.R. at 230 n. 7.

**25.** This Court has ruled along the same lines. *See Jubber v. Ruiz (In re Ruiz),* 455 B.R. 745, 753 n. 23 (10th Cir. BAP 2011) ("One must also remember, however, that if the Trustee brought an action to avoid the post-petition transfer under § 549, and recovered that transfer for the estate under § 550, the holder of the note secured by the mortgage, for example, would be entitled to a claim under § 502(h) for the amount it was required to return to the Trustee. *That claim would retain its secured status,* leaving Debtors in the same position with regard to the amount of money they owed the note holder on the secured claim.") (emphasis added).

**26.** *In re ASI Reactivation, Inc.,* 934 F.2d 1315, 1321 (4th Cir.1991) (affirming bankruptcy court's approval of settlement of § 549 claim since avoidance would not have any demonstrable benefit to bankruptcy estate); *Dave Noake,* 45 B.R. at 557 ("The court sees little point in generating a flurry of paperwork to achieve the same result as has been achieved by [the unauthorized post-petition transfer]."); *Lowe v. Sheinfeld, Maley & Kay, P.C. (In re Saunders),* 155 B.R. 405, 414 (Bankr. W.D.Tex.1993), *rev'd on other grounds,* 96 F.3d 1444 (5th Cir.1996) ("While the Trustee may avoid the post-petition transfers ... pursuant to § 549, such avoidance makes little practical sense in this case."); *Adams v. Hartconn Assocs., Inc. (In re Adams),* 212 B.R.

**27.** *Saunders,* 155 B.R. at 414 ("If ... [the secured creditor] were compelled to turn over these monies to the Trustee, the Trustee would merely return the same exact sum of money back to [the secured creditor] upon distribution of the estate.").

**28.** *Pergament v. Pagano (In re Tolkin),* No. 808–72583, 2011 WL 1302191, at *5 (Bankr. E.D.N.Y. Apr. 5, 2011), *aff'd,* 2012 WL 1828854 (E.D.N.Y. May 16, 2012); *ETS Payphones, Inc. v. AT&T Universal Card (In re PSA, Inc.),* 335 B.R. 580, 584 (Bankr.D.Del. 2005).

**29.** *Weinman v. Fidelity Capital Appreciation Fund (In re Integra Realty Res., Inc.),* 354 F.3d 1246, 1266 (10th Cir.2004).

**30.** *Integra Realty,* 354 F.3d at 1267 (quoting *In re Colonial Realty Co.,* 226 B.R. 513, 525 (Bankr.D.Conn.1998)). "The primary goal [of Section 550(a) ] is equity and restoration, *i.e.,* 'putting the estate back where it would have been but for the transfer.' " *Decker v. Tramiel (In re JTS Corp.),* 617 F.3d 1102, 1111–1112 (9th Cir.2010), *cert. denied,* — U.S. ——, 131 S.Ct. 2930, 180 L.Ed.2d 224 (2011).

703, 714 (Bankr.D.Mass.1997) ("[N]othing would be achieved by recovering payment to a secured creditor who in any event is entitled to the payment ahead of other creditors.").

The bankruptcy court correctly analyzed the effect of the Transfer on the estate as well as the impact of avoidance and recovery of the Transfer under §§ 549 and 550—no harm to the estate from the Transfer, and no benefit to the estate from avoidance and recovery.

**b. Section 502(h) Mandates Reinstatement of Bank's Lien if the Transfer is Avoided under § 549.**

██ Trustee contends that the bankruptcy estate would gain the benefit of the value of the Transfer, which would be available to distribute to the unsecured creditors, because Bank no longer has a secured claim by virtue of its sale of the Debtor Loans to PPMC. A similar argument was made by the liquidating agent and unsecured creditors' committee in *Fleet National Bank v. Gray (In re Bankvest Capital Corp.)*.[31] In that case, the liquidating agent and committee sought to avoid "gap period" payments made by the Chapter 11 debtors to a bank as unauthorized post-petition transfers. The bank sold its loan portfolio (including the debtor's notes) after the transfer in question but before the avoidance action was commenced. The bank contended that it was entitled to a secured claim against the bankruptcy estate pursuant to 11 U.S.C. § 502(h).[32] Upon deciding that the sale of the loan portfolio did not divest the bank of its subsequent § 502(h) claim, the First Circuit Court of Appeals went on to decide:

> Contrary to appellant, we believe the natural import of this language—especially the words, "shall be determined, and shall be allowed ... the same as if such claim had arisen before the date of the filing of the petition"—is that the 502(h) claim takes on the characteristics of the original claim, including, in this case, its secured status. While "allowed" would seem to refer mainly to claimant's right to participate in any dividend from the bankruptcy estate, "determine" is used variously in the Bankruptcy Code, with one usage being the "determination" of secured status. 11 U.S.C. § 506. We think the statute can be fairly read to imply that the secured or unsecured nature of the claim will be determined "the same as if such claim had arisen before the date of the filing of the petition." Certainly, we can see no reason, nor any indication of legislative intent in § 502(h), to strip a secured creditor of its secured claim in these circumstances. Indeed, to do so would seem manifestly unfair.[33]

By virtue of the plain language of § 502(h)[34], the status of a secured or unsecured claim arising thereunder is determined by its status *as if the claim had arisen the date before the petition is filed.*[35] In other words, the claim is rein-

---

**31.** 375 F.3d 51 (1st Cir.2004).

**32.** Section 502(h) provides:
(h) A claim arising from the recovery of property under section 522, 550, or 553 of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.
11 U.S.C. § 502(h). A creditor who has a transfer avoided under § 549 is entitled under the terms of 11 U.S.C. § 502(d) and (h) to file a proof of claim for the amount of the avoided transfer. 11 U.S.C. § 502(d) and (h).

**33.** *Bankvest*, 375 F.3d at 67.

**34.** Courts must look to the plain language of a statute; if it is clear on its face, the sole function of the court is to enforce it according to its terms. *In re Busetta–Silvia*, 314 B.R. 218, 223 (10th Cir. BAP 2004) (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)).

**35.** *Bankvest*, 375 F.3d at 68.

stated as if the transfer had not occurred.[36]

Furthermore, the First Circuit rejected the argument that the bank had to remain the owner of the lien to be treated as having a secured claim under § 502(h) (notwithstanding the post-transfer sale of the underlying indebtedness). It explained more fully that:

> We see little merit to this contention. As already noted, Fleet's entitlement to be treated as a secured creditor relative to its 502(h) claim rests on section 502(h)'s proviso that its claim shall be determined and allowed "the same as if such claim had arisen before the date of the filing of the petition." At such time, Fleet's claim to what were to become the gap payments was fully secured. *It is Fleet's status as a secured creditor at that time, not later, that determines the nature of its present 502(h) claim.* As the case law and commentators cited above indicate, the trustee's recovery of the transfer restores the original claim, with the transferee's status becoming that of the holder of a prepetition claim existing at the time of the filing of the debtor's petition. At that time, Fleet's interest in the Bankvest loans was fully secured. *What happened to Fleet's security after it received the gap payments is essentially irrelevant.*
>
> . . . .

In any event, what is crucial under section 502(h) is Fleet's undoubted status as a fully secured creditor relative to the gap payments as of the time of the filing of the petition. It is this which validates Fleet's current claim.[37]

 Under § 502(h), the critical time for determining whether a creditor holds a secured claim or a priority claim is, unequivocally, the date the petition is filed, not any subsequent post-petition date. Herein, there has been no assertion, or even a suggestion, that Bank did not have a valid pre-petition secured claim against Debtor. Bank's later sale of the Debtor Loans to PPMC is immaterial to deciding if Bank is entitled to a § 502(h) secured claim; Bank was a secured creditor with a valid secured claim on the petition date. Thus, if forced to return the value of the Transfer to Trustee, Bank would be entitled to the protection of its lien under § 502(h)—which is the value of the Transfer. Accordingly, the bankruptcy court correctly reasoned that avoiding the Transfer and ordering return of the value of the Transfer to Trustee would be pointless.

Trustee cites to two cases supporting his position, *Hopkins v. SunTrust Mortgage, Inc. (In re Ellis)*[38] and *Research–Planning, Inc. v. Segal (In re First Capital*

---

**36.** *Id.*

**37.** *Id.* at 68–69 (emphasis added). *See also County of Sacramento v. Hackney (In re Hackney),* 93 B.R. 213 (Bankr.N.D.Cal.1988) (granting transferee-county's motion for summary judgment upon holding that the avoidance of a transfer reinstates the county's nondischargeable claim against the debtor); *In re Laizure,* 548 F.3d 693, 697–98 (9th Cir.2008) (citing and following reasoning in *Bankvest;* court held that a claim under § 502(h) retains the same characteristics it held prior to the filing of the petition; to read § 502(h) other-

wise would negate the impact and role of § 502(h) in the overall statutory scheme). *Cf. Miranda v. Doral Fin. Corp. (In re Marrero),* 382 B.R. 861, 867 (1st Cir. BAP 2008) (affirming bankruptcy court's order granting trustee's motion for summary judgment avoiding post-petition mortgage on grounds that creditor did not have pre-petition secured creditor status and distinguishing that case from *Bankvest* on fact that bank in *Bankvest* was a secured creditor pre-petition).

**38.** 441 B.R. 656, (Bankr.D.Idaho 2010).

*Mortgage Loan Corp.).*[39] The *Ellis* case is a newly located authority for Trustee and stands relatively alone in its approach to treatment of secured creditors under §§ 549, 550 and 502(h).[40] Notwithstanding its recognition that § 550(a) is designed to place the bankruptcy estate in the same financial condition it would have been in had the avoided transfer not occurred, the bankruptcy court approached relief under §§ 549 and 550 in a much more punitive manner.[41] In rejecting the argument that in order to restore the debtors' estate to its pre-transfer condition, its two released mortgage liens must be judicially reinstated, the court stated: "Where transferees have a pre-transfer knowledge of the bankruptcy case, such as here, the Court declines to exercise its discretion to favor the interests of a wrong-doing transferee over those of the other creditors of the bankruptcy estate."[42] According to the *Ellis* court, to accept Bank's position would be to condone the conduct of the creditor who knowingly accepted an unauthorized post-petition transfer.[43] However, the *Ellis* court's reasoning ignores the plain language and effect of § 502(h) on transfers avoided and recovered under §§ 549 and 550 without any statutory justification and cannot, therefore, form a legitimate basis for reversing the bankruptcy court.

The *First Capital* case cited by Trustee can be readily distinguished as well. It dealt with an unsecured creditor seeking to impose trust status on a recovered transfer for the benefit of the transferee. The *First Capital* court concluded that it was inconsistent with the Bankruptcy Code or its policies to impress recovered funds with a trust.[44] "[W]e do not think it is equitable that one *general unsecured creditor* of the bankruptcy estate should be made whole by virtue of the exercise of the trustee's avoidance powers while others must make do with their share of the bankruptcy estate under § 726."[45] In this case, Bank was undisputedly a *secured* creditor on the petition date, rather than an unsecured creditor, and is entitled, under § 502(h), to an allowed secured claim if the Transfer is avoided as a post-petition transfer. Neither case relied upon by Trustee demands the bankruptcy court be reversed.

**c. Section 550(a) Allows Recovery Only to Benefit the Estate.**

■ A corollary point must also be made concerning the plain language of § 550, which states that a trustee may recover an avoided transfer "for the benefit of the estate."[46] The plain language of § 550(a)[47] mandates that recovery of an

**39.** 917 F.2d 424 (10th Cir.1990).

**40.** The facts in *Ellis* are simple. Twenty days after the petition date, the debtors refinanced and consolidated their existing first and second home mortgages into a single new mortgage with the pre-existing lender who then released its original liens. The transaction was accomplished without notice to the trustee or approval of the court, and the trustee sought to avoid the newly granted mortgage as a post-petition transfer under § 549.

**41.** *Ellis*, 441 B.R. at 666 (citing *USAA Fed. Savs. Bank v. Thacker (In re Taylor)*, 599 F.3d 880, 890 (9th Cir.2010)).

**42.** *Id.* at 667.

**43.** *Id.*

**44.** *First Capital*, 917 F.2d at 427.

**45.** *Id.* at 428 (emphasis added).

**46.** 11 U.S.C. § 550(a).

**47.** At least two courts would find that Trustee has no standing to bring a § 549 claim where no injury can be shown. *Abbott v. Arch Wood Prot., Inc. (In re Wood Treaters, LLC)*, No. 3:09–bk–1895, 2012 WL 3059379, at *1 (Bankr.M.D.Fla. July 25, 2012) (court may consider the question of injury to the estate as a jurisdictional matter in a § 549 adversary proceeding); *Dill v. Brad Hall & Assocs., Inc.*

avoided transfer result in some benefit to the bankruptcy estate.[48]

▮▮▮▮ There is split of authority concerning how broadly to interpret "for the benefit of the estate." However, this Court has already established that the phrase should be construed broadly, rather than narrowly, to include indirect benefits.[49] Whether a recovery would benefit the bankruptcy estate is to be made on a case-by-case basis.[50] This Court has specifically rejected the position that "benefit of the estate" means "payment to general unsecured creditors" and has held that "benefit of the estate" should be interpreted broadly.[51] To that end, this Court found in *Furr's Supermarkets* that there was a benefit to the estate where a recovery would go to pay administrative claims.[52]

▮▮▮▮ In this case, it is relatively easy to conclude that there would be no benefit to the estate since the recovery of the avoided Transfer would inure to Bank as the secured creditor. Other cases are factually distinguishable.[53]

Indeed, the bankruptcy court recognized that administering the value of the Transfer would truly only benefit Trustee since his compensation is statutorily tied to funds distributed from the bankruptcy estate. One bankruptcy court remarked under similar circumstances that:

> Clearly, the estate would suffer if [the secured creditors] were compelled to turnover the cash collateral to the Trustee. The Trustee's compensation, statutorily based on the monies distributed, would increase substantially, without

---

(In re Indian Capitol Distrib., Inc.), No. 09–11558, 2011 WL 4711895, at *11 (Bankr. D.N.M. Oct. 5, 2011) (suggesting that no harm, no foul defense really means, no harm, no standing).

**48.** 11 U.S.C. § 550(a); *Barber v. McCord Auto Supply, Inc. (In re Pearson Indus., Inc.)*, 178 B.R. 753, 757 (Bankr.C.D.Ill.1995) (holding that, "We, likewise, agree with the district court that §§ 548 and 550 provide for avoidances of transfers and allow recovery of the transferred property or its value only if the recovery is for the benefit of the estate.").

**49.** *Gonzales v. Conagra Grocery Prods. Co. (In re Furr's Supermarkets, Inc.)*, 373 B.R. 691, 699 (10th Cir. BAP 2007). *See also* Jonathon A. Carson, *Recovering Avoidable Transfers Under Section 550 of the Bankruptcy Code: Defining "For the Benefit of the Estate,"* 72 Chi.-Kent L.Rev. 591 (1996) (discussing and collecting cases that represent narrow and broad interpretation of "for the benefit of the estate").

**50.** *Furr's Supermarkets*, 373 B.R. at 699.

**51.** *Id.*

**52.** *Id.* at 700.

**53.** *See e.g., Mellon Bank, N.A. v. Dick Corp.*, 351 F.3d 290 (7th Cir.2003) (concluding there was a benefit to the estate even though money recovered would go directly to pre-petition lenders where the estate gained the indirect benefit of the continuation of the debtor's business pending a sale); *Trans World Airlines, Inc. v. Travellers Int'l AG. (In re Trans World Airlines, Inc.)*, 163 B.R. 964 (Bankr. D.Del.1994) (finding there would be a benefit to the estate even though substantially all of a recovery would go to post-petition secured creditor because unsecured creditors would benefit from the enhanced value of the reorganized debtor by becoming shareholders); *Gonzales v. Nabisco Div. of Kraft Foods, Inc. (In re Furrs)*, 294 B.R. 763 (Bankr.D.N.M. 2003) (holding there was a benefit to the estate even where two-thirds of recovery by trustee in avoidance actions, as agreed under a settlement agreement, would go to post-petition lenders and the remainder would be available to pay other estate obligations, including the Chapter 11 administrative expenses incurred before the case converted to Chapter 7); *Jubber v. Search Mkt. Direct, Inc. (In re Paige)*, 413 B.R. 882 (Bankr.D.Utah 2009), *aff'd in part by* 685 F.3d 1160 (10th Cir.2012) (holding it is appropriate to consider future benefits to the bankruptcy estate as well as past benefits).

any corresponding benefit to the estate. See 11 U.S.C. § 326. The court, therefore, will not allow the Trustee to avoid the post-petition transfers and compel their turnover.[54]

The Court believes that the only benefit to be seen by avoidance and recovery of the Transfer is to Trustee. Funneling the value of the CD through the bankruptcy estate would drive up administrative costs, which is not a benefit to the bankruptcy estate. Certainly, this Court does not condone secured creditors unilaterally making post-petition transfers only to later claim there would be no benefit to the bankruptcy estate from avoidance and recovery of such transfers. On the other hand, the Court cannot encourage trustees to run unauthorized post-petition transfers through estates simply to return the same value to the secured creditor later. Such would be a tacit endorsement of fee churning which is unacceptable.

### d. *11 U.S.C. § 550(e) Does Not Apply.*

Trustee asserts that Bank is limited to defenses listed in § 550(e). That section provides:

> (e)(1) A good faith transferee from whom the trustee may recover under subsection (a) of this section has a lien on the property recovered to secure the lesser of—
>
> > (A) the cost, to such transferee, of any improvement made after the transfer, less the amount of any profit

realized by or accruing to such transferee from such property[.][55]

According to Trustee, Bank cannot be considered a "good faith transferee" because it made the Transfer with knowledge that the automatic stay was in effect. Trustee cites *Ellis* to support his proposition, but this Court concludes that *Ellis* is not persuasive. Among other things, the court in *Ellis* was considering 11 U.S.C. § 549(c) which provides a defense for a "good faith purchaser," not § 550(e). Also, and most importantly, nothing in *Ellis* or any other authority suggests that the sole remedy for Bank is found in § 550(e), or more aptly, that Trustee is entitled to strip Bank's lien under the guise that Bank's only possible defense to an avoidance of a post-petition transfer is § 550(e). This Court rejects such argument.

Trustee further contends that the bankruptcy court mistakenly prejudged the outcome of the administration of the bankruptcy estate, *i.e.* the bankruptcy court erroneously accepted that the Bank would ultimately be determined to hold a secured claim secured by the CD, that there would be no funds flowing from recovery of the Transfer to unsecured creditors and that Bank would comply with the prerequisites outlined in 11 U.S.C. § 502(d) and Rule 3002(c)(3) of the Federal Rules of Bankruptcy Procedure.[56] While Trustee failed to raise this argument before the bankruptcy court,[57] the bankruptcy court's

---

**54.** *Lowe v. Sheinfeld, Maley & Kay, P.C. (In re Saunders)*, 155 B.R. 405, 415 (Bankr.W.D.Tex. 1993), *rev'd on other grounds*, 96 F.3d 1444 (5th Cir.1996).

**55.** 11 U.S.C. § 550(e).

**56.** Rule 3002(c)(3) provides that a defendant in an adversary proceeding may file a claim in the bankruptcy case if there is a judgment entered against it so long as it files the claim within thirty (30) days of entry of the judg-

ment and so long as the defendant has satisfied the judgment within thirty (30) days. Likewise, § 502(d) provides for the disallowance of a claim if the claimant fails to timely satisfy a judgment against it under § 550.

**57.** This argument is one Trustee did not raise before the bankruptcy court. As a general rule, a federal appellate court does not consider an issue not passed upon below. *In re C.W. Mining Co.*, 625 F.3d 1240, 1246 (10th Cir.2010). A federal appellate court does not

analysis is more sound than Trustee's conjecture [58] concerning how he would have administered the bankruptcy estate but for the Transfer. More fundamentally, Trustee's contention misses the point that permitting recovery of the Transfer would merely run money through the bankruptcy estate, generate fees for Trustee and not result in any direct or indirect benefit to the unsecured creditors, the constituency on whose behalf Trustee is obligated to act.

Accordingly, the bankruptcy court correctly determined that it would be pointless to require Bank to return the CD to Trustee as the estate had no equity in the CD and the return would not benefit the bankruptcy estate and would be a waste of judicial and estate resources. The bankruptcy court properly surmised that adopting Trustee's position would effectively strip Bank's lien for which no statutory authority exists. As a result, there is no error in the bankruptcy court's decision to grant summary judgment in favor of Bank and against Trustee on his claim under §§ 549 and 550.

### 2. *Trustee's Claim Under §§ 362 and 542 Fails.*

#### a. *Although the Transfer Violated the Automatic Stay, No Harm Needs to be Remedied.*

■ Both parties agree that the stay was violated when the Transfer was made without first obtaining relief from the automatic stay. The question is whether the bankruptcy court correctly held that, even though there was a technical violation of the stay, the remedy sought by Trustee—essentially stripping Bank of its lien—was an impermissible remedy. For the following reasons, the Court affirms the bankruptcy court on this claim as well.

■ Section 362(a)(3) of the Bankruptcy Code states that the filing of a petition operates as a stay of—"any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." [59] The law in the Tenth Circuit is clear that actions taken in violation of the automatic stay are *void ab initio;* that is, they are without legal effect. [60]

The automatic stay is intended to allow the debtor to attempt to repay his debts or reorganize his financial affairs by virtue of a respite from demanding creditors. It also protects creditors by prohibiting the dismembering of the bankruptcy estate. Thus, the automatic stay maintains the status quo so as to ensure that there is an orderly distribution of estate assets. [61]

consider an issue not passed upon below. *Walker v. Mather (In re Walker),* 959 F.2d 894, 896 (10th Cir.1992). Issues and arguments advanced before the bankruptcy court will not be considered for the first time on appeal. *Gonzales v. Nabisco Div. of Kraft Foods, Inc. (In re Furr's Supermarkets, Inc.),* 317 B.R. 423, 432 (10th Cir. BAP 2004).

**58.** *See* Reply Brief at 1 (Trustee recognizes Bank's pre-petition status as an oversecured creditor).

**59.** 11 U.S.C. § 362(a).

**60.** *Franklin Savs. Ass'n v. Office of Thrift Supervision,* 31 F.3d 1020, 1022 (10th Cir.1994)

(citing *Kalb v. Feuerstein,* 308 U.S. 433, 438, 60 S.Ct. 343, 84 L.Ed. 370 (1940)); *Ellis v. Consol. Diesel Elec. Corp.,* 894 F.2d 371, 372–73 (10th Cir.1990); *Goldston v. United States (In re Goldston),* 104 F.3d 1198, 1201 (10th Cir.1997); *Gonzales v. Beery (In re Beery),* 452 B.R. 825, 834 (Bankr.D.N.M.2011); *Jubber v. Search Mkt. Direct, Inc. (In re Paige),* 413 B.R. 882, 915 (Bankr.D.Utah 2009), *aff'd in part by* 685 F.3d 1160 (10th Cir.2012); *In re Adamic,* 291 B.R. 175, 180 (Bankr.D.Colo.2003).

**61.** *Beery,* 452 B.R. at 833 (quoting and citing *Yorke v. Citibank, N.A. (In re BNT Terminals, Inc.),* 125 B.R. 963, 971 (Bankr.N.D.Ill. 1991)).

192

■ The effect of violating the automatic stay is to void the action, whatever the context.[62] "The only effect of violation of the automatic stay, other than the possibility of contempt, is the unenforceability of any benefit the creditor obtained as a result of the violation."[63] Where a transfer or transaction is voided as being in violation of the automatic stay, the proper remedy is to return the parties to the place each occupied prior to the violation of the stay.[64] The Tenth Circuit has previously adopted this same position, holding that the relief for violating the automatic stay is to return the parties to the status quo before the stay violation occurred (including payment of attorneys fees incurred).[65]

■ The Tenth Circuit authority emphasizes that the goal of remedying a violation of the automatic stay is to restore the status quo for *both* parties. Unfortunately, Trustee ignores the point that the status quo applies to both sides. Trustee's

position would have the status quo returned to the bankruptcy estate by return of the value of the CD, but would not accord the same treatment to Bank by depriving it of its pre-Transfer status as a secured creditor.

■ Section 362 does not, as Trustee asserts, provide a basis for stripping an otherwise valid and enforceable lien. " 'Although the automatic stay protects a debtor from various collection efforts over a specified period, it does not extinguish or discharge any debt.' "[66] If the claim remains valid, so do the liens securing it. Section 362 contains no mechanism for voiding Bank's previously existing and undisputed secured claim as of the petition date as a consequence for violating the stay.[67]

■ Trustee's argument that the Transfer is void but that the voidness only affects one side of the Transfer is, as the bankruptcy court found, illogical.[68] The only reason the Bank's lien on the CD was

62. *Goldston,* 104 F.3d at 1201.

63. *Id.*

64. *In re Donovan,* 266 B.R. 862, 871 (Bankr. S.D.Iowa 2001); *Venn v. Bazzel (In re Lambert),* 273 B.R. 663, 668 (Bankr.N.D.Fla. 2002).

65. *In re C.W. Mining Co.,* 625 F.3d 1240, 1246–47 (10th Cir.2010).

66. *Franklin Savs. Ass'n v. Office of Thrift Supervision,* 31 F.3d 1020, 1022 (10th Cir.1994) (citing *Pa. Pub. Welfare Dept. v. Davenport,* 495 U.S. 552, 560, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990)) (district court's voiding of the claim in no sense extinguished or discharged the creditor's right to resubmit the claim).

67. *See United States v. Ruff (In re Rush–Hampton Indus., Inc.),* 98 F.3d 614 (11th Cir. 1996) (trustee objected to claims of IRS, who had, after filing a claim in the bankruptcy case, offset an overpayment against such

claim without seeking stay relief until after the trustee objected, on the basis of the stay violation as a penalty; court concluded that the Bankruptcy Code does not give the bankruptcy court the authority to deny all or part of a setoff in lieu of damages simply because the creditor initially violated the automatic stay). *See also In re Shortt,* 277 B.R. 683, 693 (Bankr.N.D.Tex.2002).

68. An extremely litigious approach to a violation of the automatic stay that does not cause damages must be guarded against. *In re Saratoga Springs Plastic Surgery, P.C.,* No. 1:03CV896, 2005 WL 357207, at *5 n. 4 (N.D.N.Y.2005), *aff'd,* 172 Fed.Appx. 339 (2d Cir.2006) (citing *In re Hill,* 222 B.R. 119, 124 (Bankr.N.D.Ohio 1998)); *In re Haan,* 93 B.R. 439, 441 (Bankr.W.D.N.C.1988) (court declined to award damages where only loss was attorney's fees in pursuing stay violation; essentially no harm no foul so no attorney fees). If there are no actual damages, there can be no sanction for violation of the stay. *In re Martinez,* 281 B.R. 883, 886 (Bankr.W.D.Tex. 2002).

extinguished was because the CD was liquidated and the proceeds applied to the balance of the Notes. If, as Trustee suggests, the effect of the Transfer being void was that the CD never left the estate, then Bank's lien was correspondingly never extinguished by liquidation and application of the proceeds of the CD to the Notes. To suggest otherwise is contrary to the established law in this Circuit regarding the effect of a void transaction.

### b. *Turnover is not Authorized Where There will be No Benefit to the Estate.*

 Section 542(a), likewise, does not provide a mechanism for voiding Bank's pre-petition lien on the CD. Section 542(a) requires delivery of estate property to the trustee.[69] However, § 362(d) works in tandem with § 542(a) to provide creditors with what amounts to an affirmative defense to the automatic stay. Section 542(a) requires a creditor to turnover estate property, with the only exception being if such property is "of inconsequential value or benefit to the estate."[70] "It can-

not be coincidence that §§ 362(d)(2) and 542(a) both allow relief to a creditor where the estate has little or no equity interest in the property."[71]

On the petition date, Bank held an oversecured claim secured by, among other things, the CD. Turnover of the CD would not, therefore, provide any benefit to the estate. The lack of a benefit is a defense to a demand for turnover under § 542.

### c. *Lien Stripping Would be Punitive and Unauthorized under the Bankruptcy Code.*

The only Bankruptcy Code provision addressing remedies for stay violations, 11 U.S.C. § 362(k), provides that, "an individual injured by any willful violation" of the automatic stay "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."[72] There is a split of authority concerning whether a trustee seeking a recovery on behalf of the estate is properly considered an "individual" under § 362(k).[73]

---

69. 11 U.S.C. § 542(a).

70. *In re Yates,* 332 B.R. 1, 5 (10th Cir. BAP 2005) (quoting § 542(a)).

71. *Id.* at 6.

72. The bankruptcy court assumed there had been a willful violation of the automatic stay, but still concluded Trustee was not entitled to the relief requested. For purposes of this memorandum, the Court can, likewise, assume there has been a willful violation of the automatic stay.

73. *See e.g., In re Pace,* 67 F.3d 187, 192–93 (9th Cir.1995) (concluding that a Chapter 7 trustee is not an "individual" who can recover damages under § 362); *Maritime Asbestosis Legal Clinic v. LTV Steel Co., Inc. (In re Chateaugay Corp.),* 920 F.2d 183, 186–87 (2nd Cir.1990) (holding that "individual" applied only to natural persons, not an artificial entity such as a corporation, and rejecting established line of cases holding that corporate

debtors could recover damages for violation of the automatic stay); *Jove Eng'g, Inc. v. IRS,* 92 F.3d 1539, 1551–53 (11th Cir.1996) (concluding that plain language of that section meant that corporate-debtor could not recover damages under § 362(h) [previous version of current § 362(k)] but could seek relief under the bankruptcy court's civil contempt powers pursuant to 11 U.S.C. § 105(a)); *Spookyworld, Inc. v. Town of Berlin (In re Spookyworld, Inc.),* 346 F.3d 1, 8 (1st Cir. 2003); *Sosne v. Reinert & Duree, P.C. (In re Just Brakes Corporate Sys., Inc.),* 108 F.3d 881, 884–85 (8th Cir.1997); *Johnston Envtl. Corp. v. Knight (In re Goodman),* 991 F.2d 613, 618–19 (9th Cir.1993). *Cf. In re Atl. Bus. and Cmty. Corp.,* 901 F.2d 325, 329 (3d Cir. 1990) ("Although Section 362(h) refers to an individual, the section has uniformly been held to be applicable to a corporate debtor."); *Budget Serv. Co. v. Better Homes of Va., Inc.,* 804 F.2d 289, 292 (4th Cir.1986) ("[W]e construe the word 'individual' to include a corporate debtor.").

This Court has addressed this issue in the context of whether a limited partnership debtor could recover damages for violations of the automatic stay under then applicable § 362(h).[74] This Court concluded that:

> We agree with the reasoning of the majority position, which generally focuses on the "plain meaning" of § 362(h). As noted by courts adopting the majority view, the Bankruptcy Code uses the term "individual" in a manner distinct from a "person" or a "corporation." For example, the Code defines "person" to include "individual[s], partnership[s], and corporation[s]." In addition, "corporation" is defined to include an "association having a power or privilege that a private corporation, but not an individual or a partnership, possesses." Thus, "in defining 'person,' Congress used the word 'individual' to distinguish natural persons from corporations and partnerships. Other sections of the Bankruptcy Code either make the same distinction or use the word 'individual' in such a way that its only intended meaning could be a natural person." This plain reading of § 362(h) does not prevent business entities from seeking other bankruptcy remedies for stay violations.

> In this case, Debtor is a partnership and not a natural person and is thus not entitled to an award of damages under § 362(h). Consequently, the bankruptcy court properly granted summary judgment in favor of WNL and Koster on Debtor's § 362(h) claim.[75]

■ Based on the well-established precedent of this Court and other circuits, and the plain language of § 362(k), the Court concludes that a trustee acting on behalf of the estate, which is an artificial entity, cannot recover damages under § 362(k) for a violation of the automatic stay.[76]

Although this conclusion is sufficient grounds to affirm the bankruptcy court, there is another basis for the Court to affirm the bankruptcy court. The bankruptcy court accurately noted that Trustee could have sought sanctions pursuant to the bankruptcy court's civil contempt powers under 11 U.S.C. § 105(a), but did not. Trustee did not make a claim for contempt, but even if he had, the bankruptcy court properly concluded that the relief Trustee has repeatedly sought—stripping Bank of its lien—would be improper.

■ The Tenth Circuit has held that bankruptcy courts have civil contempt powers pursuant to § 105(a).[77] A bankruptcy court may exercise its civil contempt power for violation of the automatic stay so long as doing so is consistent with the purposes of civil contempt orders *and* doing so is within the limits of the bankruptcy court's § 105(a) powers.[78] Sanctions for civil contempt must meet one or both of the following purposes: (1) to compel or ensure compliance with a court order; and (2) to compensate parties for losses caused by the contemnor's refusal to

---

**74.** *In re Rafter Seven Ranches L.P.,* 414 B.R. 722, 732–33 (10th Cir. BAP 2009).

**75.** *Id.* (footnotes omitted).

**76.** *In re Hassan,* No. 04–20332–7, 2010 WL 5348761, at *6–8 (Bankr.D.Kan. Dec. 21, 2010) (holding that Chapter 7 trustee was not a natural person that could recover damages

under § 362(k) for a violation of the automatic stay).

**77.** *In re Skinner,* 917 F.2d 444, 447 (10th Cir.1990) (holding that bankruptcy courts had statutory power of civil contempt under 11 U.S.C. § 105(a)).

**78.** *Id.*

abide by a court order.[79] Civil contempt orders should be remedial, not punitive, which is the purpose of criminal contempt.[80] Moreover, sanctions for civil contempt cannot be a substitute for damages available at law.[81] "In other words, a bankruptcy court's exercise of its authority under § 105(a) may not contravene or disregard the plain language of a statute." [82]

■ In the instant action, the relief requested by Trustee, turnover of the value of the CD free and clear of Bank's undisputed lien thereon, is far from remedial in nature. Seen for what it is, it is lien stripping, a substantive remedy not granted in § 362 or any other applicable provision of the Bankruptcy Code. In fact, fully secured creditors whose liens are not avoided are entitled to have their claims paid in full or have their liens pass through bankruptcy unaffected.[83]

Not only would stripping Bank of its lien be impermissibly punitive and prohibited by established law, but also the bankruptcy estate has suffered no harm which would be remedied by stripping Bank's otherwise valid lien for its stay violation. Although the Court does not endorse actions that violate the automatic stay, the end result of the Transfer is that Bank got that to which it was entitled, the value of its lien on the CD, no more or less. This was the same conclusion reached by the bankruptcy court in *Adams*[84] where the court found:

> Nevertheless, this Court is unable to find a source of actual damages suffered by the Debtor. It is true that the subject rents were property of the Debtor. But those rents emerged from Chapter 7 subject to the ongoing WPCA lien. *See Dewsnup v. Timm*, 502 U.S. at 418–19, 112 S.Ct. at 778; *Farrey v. Sanderfoot*, 500 U.S. 291, 297, 111 S.Ct. 1825, 1829, 114 L.Ed.2d 337 (1991) ("Ordinarily, liens and other secured interests survive bankruptcy."); *Chandler Bank of Lyons v. Ray (In re Ray)*, 804 F.2d 577, 579 (10th Cir.1986) ("[U]navoided liens pass through [11 U.S.C.] § 506(d) without action by the lien holder."); *In re Maylin*, 155 B.R. 605, 611 (Bankr.D.Me. 1993) ("[U]nless the secured creditor is hailed into bankruptcy court to respond to an effort to alter, amend or avoid its position, it may ignore the bankruptcy proceedings. The lien passes through bankruptcy.").[85]

In light of (1) no proven injury to Trustee or the bankruptcy estate as a result of

---

**79.** *Id.* at 447, n. 2 (quoting *Gibbons v. Haddad (In re Haddad)*, 68 B.R. 944, 952 (Bankr. D.Mass.1987)).

**80.** *Id.* at 447–48. "[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988).

**81.** *Switzer v. Coan*, 261 F.3d 985, 991 (10th Cir.2001) (holding that the Tenth Circuit "has repeatedly applied the general rule that equitable relief is available only in the absence of adequate remedies at law.").

**82.** *In re Scrivner*, 535 F.3d 1258, 1263 (10th Cir.2008).

**83.** *Dewsnup v. Timm*, 502 U.S. 410, 419–20, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (lien stripping that is not expressly provided for in the Bankruptcy Code is barred); *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) (holding that a mortgage lien survives bankruptcy despite the debtor's personal discharge); *Chandler Bank of Lyons v. Ray*, 804 F.2d 577 (10th Cir.1986) (holding that liens that are not avoided pass through bankruptcy without any action required by the lienholder).

**84.** *Adams v. Hartconn Assocs., Inc.*, 212 B.R. 703 (Bankr.D.Mass.1997).

**85.** *Id.* at 711.

196

the Transfer and (2) no authority to justify stripping Bank's valid pre-petition lien for violating the stay, the bankruptcy court properly granted summary judgment for Bank and against Trustee on his claim under §§ 362 and 542.

## V. *Conclusion*

Upon review of the record, and upon conducting a *de novo* review of the bankruptcy court's decision, this Court hereby AFFIRMS the bankruptcy court's decision to grant summary judgment in favor of Bank and against the Trustee.